Syed Saifuddin **YUSUF**,
Plaintiff–Appellant,

v.

**VASSAR COLLEGE, Defendant–Appellee.**

No. 874, Docket 93–7519.

United States Court of Appeals,
Second Circuit.

Submitted Dec. 22, 1993.

Decided Sept. 15, 1994.

Ronald L. Wilson, New Orleans, LA, for plaintiff-appellant.

Maurice F. Curran, John M. Donoghue, Anderson, Banks, Curran & Donoghue, Mount Kisco, NY, for defendant-appellee.

Before: WINTER and McLAUGHLIN, Circuit Judges.*

WINTER, Circuit Judge:

This appeal raises important questions as to when college disciplinary proceedings violate federal laws against gender discrimination. Syed Saifuddin Yusuf appeals from Judge Duffy's dismissal of his complaint, which allegedly arose out of a series of events that occurred in February and March 1992 while he was a student at Vassar College. Yusuf alleges that his roommate, James Weisman, brutally attacked him. Yusuf alleges that when he pursued a criminal prosecution against Weisman, Weisman's girlfriend, Tina Kapur, retaliated against him by bringing false sexual harassment charges. These charges were heard by the College Regulations Panel, which imposed a one-term suspension on Yusuf. Yusuf claims, *inter alia,* that his being found guilty of the sexual harassment charge and his receiving a stiffer penalty for harassing Kapur than Weisman received for his battery were acts of race and gender discrimination in violation of, respectively 42 U.S.C. § 1981 (Supp. IV 1992), and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 (1988).

The district court dismissed Yusuf's federal claims pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that both failed to state a claim upon which relief can be granted. It then exercised its discretion not to retain Yusuf's supplemental state law claims alleging breach of an implied contract and the intentional infliction of emotional distress. *Yusuf v. Vassar College,* 827 F.Supp. 952, 957 (S.D.N.Y.1993). We affirm the district court's dismissal of Yusuf's Section 1981 claim. However, we reverse the district court's dismissal of Yusuf's Title IX claim and reinstate Yusuf's supplemental state law claims.

## BACKGROUND

Yusuf's complaint, the allegations of which we must assume to be true for the purposes of this appeal, alleges as follows. Yusuf, a Bengali male, enrolled at Vassar College, an institution that receives Federal financial assistance, in Fall, 1989. Yusuf's performance

---

* Judge Timbers recused himself from the panel after oral argument. Pursuant to this court's Rule § 0.14, the appeal has been heard and decided by the remaining two judges of the panel.

and behavior at Vassar were "exemplary" until February 1992.

Yusuf's roommate at pertinent times was James Weisman, a Caucasian student. On February 11, 1992, Weisman, who was inebriated, physically attacked Yusuf "without any reason, provocation or justification." The attack left Yusuf unconscious, with a blackened right eye, swollen jaw, and bruises. The injuries required treatment at a nearby hospital, where Yusuf incurred roughly $700 in medical expenses.

Weisman was subsequently arrested by the Poughkeepsie Police Department and charged with the crimes of battery, intoxication, and falsification of identification. The matter was also brought to the college's attention and the College Regulations Panel scheduled a hearing for February 17, 1992. Prior to the hearing, both Weisman and his girlfriend, Tina Kapur, sought to dissuade Yusuf from pressing charges with either the local authorities or college officials. Yusuf offered to drop all charges in return for Weisman's agreement to pay Yusuf's medical expenses, and Weisman initially agreed to this arrangement. However, Weisman later equivocated, and Yusuf refused to drop the charges.

When Yusuf testified against Weisman at the College Regulations Panel hearing, he was not questioned about the alleged assault and battery, but instead about his relationship with Kapur. The questions included: "Would you say that your relationship with Tina was abusive?" and "Were you and Tina ever sexually involved?" The panel members, all of whom were Caucasian and two of whom were friends of Weisman's and Kapur's, found Weisman guilty of the charges against him but gave him only a "suspended suspension" for the Spring 1992 semester. This disposition allowed Weisman to remain enrolled at Vassar and to complete the requirements for his expected graduation at the close of the semester.

On February 24, 1992, the day before Weisman was to appear in court on charges stemming from the attack on Yusuf, Yusuf heard that Kapur was considering filing sexual harassment charges against him. By letter dated April 8, 1992, Yusuf was informed that Kapur had filed such harassment charges with the college. The letter did not inform Yusuf of the basis or details of the charges but instead merely instructed him to appear at a hearing on the charges on April 13, 1992 at 5:00 p.m.

On April 9, 1992, Yusuf met with Faith Nichols, a college administrator and the Chair of the College Regulations Panel. Yusuf was permitted to see, but not photocopy, a statement submitted by Kapur. Yusuf then submitted to Nichols a list of twelve witnesses he wished to call at the hearing. Nichols, however, told Yusuf that twelve witnesses were too many and reduced the list to seven, deleting several key witnesses in the process.

Yusuf's difficulties in presenting his defense were compounded by the fact that his "most crucial" witness, Omar Salaam, was away from campus and could not be present for the hearing. Yusuf offered a statement from Salaam totally discrediting Kapur's testimony. Nichols, however, advised Yusuf that the statement would not be permitted because it could not be subjected to cross-examination.

The disciplinary hearing was held on April 13, 1992. At the outset of the hearing, Nichols announced that it would end at 9:00 p.m. Several of the members of the panel had also served in that capacity at the Weisman disciplinary hearing. At the hearing, Kapur testified that Yusuf had sexually harassed her on two occasions. The complaint does not elaborate on the nature of these incidents. She was unable, however, to identify the dates, other than that they occurred sometime during the month of December 1991. When Yusuf asked Kapur to be more specific about the dates of the incidents, Nichols admonished him: "We are not concerned with when the event occurred, only whether it could have occurred." The panel then settled on December 10, 1991 as the date of one of the incidents. Yusuf attempted to introduce records showing that he was confined to the college infirmary on that day with diarrhea in an attempt to prove that he was either absent or was too weak to perform the acts of which he stood accused. The panel,

however, did not allow introduction of the records. Yusuf called witnesses who testified that they had seen Yusuf and Kapur engaging in "horseplay" on numerous occasions, including occasions subsequent to the dates of the alleged harassment, and that Yusuf and Kapur were good friends and had remained on such terms throughout the time of the alleged incidents. Yusuf argued that the charge of harassment had not been filed until after Yusuf had made it clear to Kapur that he was not dropping the criminal charges against Weisman. Nichols ended the hearing at 9:00 p.m., notwithstanding the fact that Yusuf still had two witnesses from his approved list that had not yet been called.

On April 14, 1992, the panel found that Yusuf had sexually harassed Kapur, and disciplined Yusuf by i) banning him from Main Hall, ii) giving him a suspended suspension for the remainder of the Spring 1992 semester, and iii) suspending him from May 20, 1992 until Spring semester, 1993. On April 15, Yusuf and a friend met with Nichols to discuss the hearing's outcome. Nichols told Yusuf: "The panel did not believe you. You see, at the first trial [James Weisman's], we heard Tina say that you harassed her, and that charges ... would be forthcoming. Thus, it was easy for us to believe her [at the second trial]." Yusuf then unsuccessfully appealed the panel's decision to the Dean of Student Life, Colton Johnson, and Vassar's Acting President, Nancy Dye.

Yusuf's complaint asserts four claims for relief based on these allegations. Yusuf's first claim is that he was denied rights guaranteed to him under 42 U.S.C. § 1981 because "[r]ace was a motivating factor behind the guilty verdict returned against plaintiff and the disparity in the sentences rendered in the two cases." As a second claim for relief, Yusuf asserts that Vassar discriminated against him on account of his gender in violation of Title IX, 20 U.S.C. § 1681, by finding him guilty of the sexual harassment charge. As part of this claim, Yusuf alleges that:

"34. Defendant has historically and systematically rendered verdicts against males in sex harassment cases, solely on the basis of sex.

"35. Male respondents in sex harassment cases at Vassar College are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof."

Yusuf also pled supplemental state law claims for breach of an implied contract and intentional infliction of emotional distress. The complaint sought injunctive and declaratory relief, as well as compensatory and punitive damages.

The district court denied Yusuf's request for a preliminary injunction enjoining Vassar from enforcing its suspension of him for the Fall 1992 semester. The district court thereafter dismissed Yusuf's federal claims pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that both failed to state a claim upon which relief can be granted and then exercised its discretion not to retain the supplemental state law claims.

## DISCUSSION

■ Our review of the district court's dismissal of claims for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6) is plenary. *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992). A complaint must not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 17 (1st Cir.1989); *Albert v. Carovano*, 851 F.2d 561, 572–73 (2d Cir.1988) (*en banc*). Therefore, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Martin v. N.Y. State Dep't of Mental Hy-*

*giene,* 588 F.2d 371, 372 (2d Cir.1978) (per curiam).

### 1. *The Section 1981 Claim*

■ Yusuf first claims that he was denied rights conferred by the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Supp. IV 1992), because "[r]ace was a motivating factor behind the guilty verdict returned against plaintiff and the disparity in the sentences rendered in the two cases." Section 1981 bars certain racially motivated and purposefully discriminatory acts. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Albert,* 851 F.2d at 572. The statute's prohibitions apply to private as well as state actors, including independent academic institutions. *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987); *Runyon v. McCrary,* 427 U.S. 160, 168, 174–75, 96 S.Ct. 2586, 2596–97, 49 L.Ed.2d 415 (1976); *Albert,* 851 F.2d at 571.

■ Yusuf's Section 1981 claim has two parts: a claim of discrimination in the rendering of the guilty verdict and a claim of selective enforcement based on the disparity between his punishment and Weisman's. As to the guilty verdict, it is clear that Yusuf's claim was properly dismissed as conclusory. *See Albert,* 851 F.2d at 572 (dismissing § 1981 complaint because allegations "too conclusory"). Yusuf has offered no reason to suspect that his being found guilty of sexual harassment had anything to do with his race, other than his assertion that the panel members were white and that he is Bengali. In fact, his complaint itself identifies a number of other, race-neutral factors that may have led to the panel's determination, *e.g.,* the fact that several of the panel members may have been friends of Weisman and Kapur, and the fact that Nichols thought Kapur's earlier testimony bolstered her testimony at the second hearing. A plaintiff may, of course, plead in the alternative, but the abundance of other possible reasons for the panel's decision combined with the lack of any specific factual support for his claim of a racial motivation illustrates that his claim here is simply a "naked allegation" of racial discrimination. *See Albert,* 851 F.2d at 572.

■ Dismissal of Yusuf's racial discrimination claim based on the disparity between his sentence and Weisman's was also proper because it too failed to connect the selectivity to racial bias.

### 2. *The Title IX Claim*

■ As a second federal claim, Yusuf alleged that Vassar discriminated against him on account of his gender in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 (1988), by finding him guilty of the sexual harassment charge.

> Title IX provides, in relevant part, that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a) (1988). Title IX is enforceable through an implied private right of action, *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), for monetary damages as well as injunctive relief, *Franklin v. Gwinnett County Pub. Sch.,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

■ Title IX was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities. Because the statutes share the same goals and because Title IX mirrors the substantive provisions of Title VI of the Civil Rights Act of 1964, *Grove City College v. Bell,* 465 U.S. 555, 566, 104 S.Ct. 1211, 1217–18, 79 L.Ed.2d 516 (1984), courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII. *Mabry v. State Bd. of Community Colleges & Occupational Educ.,* 813 F.2d 311, 316–17 (10th Cir.), *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987); *Sharif by Salahuddin v. New York State Educ. Dep't,* 709 F.Supp. 345, 360 (S.D.N.Y.1989). Proof of discriminatory intent is necessary to state a disparate treatment claim under Title VII. *International Bhd. of Teamsters v. United*

*States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Zahorik v. Cornell Univ.,* 729 F.2d 85, 91 (2d Cir.1984).

■■■ Looking to these analogous bodies of law, we may safely say that Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline. *See* Civil Rights Act of 1991, § 107(a), 42 U.S.C. § 2000e–2(m) (Supp. IV 1992) ("an unlawful employment practice is established when ... sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice").

■■■ Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories. In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense. In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender. Plaintiffs may plead in the alternative that they are in both categories, but in neither case do wholly conclusory allegations suffice for purposes of Rule 12(b)(6). *See, e.g., Albert,* 851 F.2d at 572.

■■■ Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail. We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming, absent a claim of selective enforcement. However, the pleading burden in this regard is not heavy. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized

strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof.

However, allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss. The fatal gap is, again, the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias. A plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. Allegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases. *See, e.g., Silver v. City University of New York,* 947 F.2d 1021 (2d Cir.1991) (per curiam); *Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991); *Krieger v. Gold Bond Bldg. Prods.,* 863 F.2d 1091 (2d Cir.1988). Such allegations might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender. Of course, some allegations, such as statements reflecting bias by members of the tribunal, may suffice both to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias.

■■■ We believe that Yusuf's complaint suffices to survive a motion to dismiss with regard to his claim that, because of his gender, he was erroneously found to have harassed Kapur. Yusuf's allegations are significantly more detailed than those at issue in *Martin* and *Albert,* as well as those alleged in support of his Section 1981 claim. The allegations in support of the Title IX claim do more than merely recite the pleader's conclusion that the complained-of conduct was discriminatory. Instead, the complaint alleges events that, if proven, would support an in-

ference of discrimination. *Cf. Martin,* 588 F.2d at 372; *Albert,* 851 F.2d at 572.

Fairly read, Yusuf's complaint alleges that a false and somewhat stale charge of sexual harassment was made against him only after he pursued criminal charges for a brutal assault by the complainant's boyfriend. It alleges that he was on good terms with the complainant after the alleged incidents of sexual harassment and until he pursued those criminal charges. Yusuf's complaint further alleges that various actions by the presiding official of the disciplinary tribunal prevented him from fully defending himself. Finally, he asserts that males accused of sexual harassment at Vassar are "historically and systematically" and "invariably found guilty, regardless of the evidence, or lack thereof."

Similar allegations, if based on race in employment decisions, would more than suffice in a Title VII case, and we believe they easily meet the requirements of Title IX. They go well beyond the surmises of the plaintiff as to what was in the minds of others and involve provable events that in the aggregate would allow a trier of fact to find that gender affected the outcome of the disciplinary proceeding.

The allegations concerning the circumstances surrounding the charge against Yusuf and the conduct of the disciplinary proceeding sufficiently put into question the correctness of the outcome of that proceeding. The allegation that males invariably lose when charged with sexual harassment at Vassar provides a verifiable causal connection similar to the use of statistical evidence in an employment case. *See, e.g., Hollander v. American Cyanamid Co.,* 895 F.2d 80, 84 (2d Cir.1990). We need not pause at the pleading stage of the proceedings to consider issues regarding what statistical sample would be significant or what degree of consistency in outcome would constitute a relevant pattern. Caselaw on such issues in other contexts involving discrimination exists, *see, e.g., Teamsters,* 431 U.S. at 337–342, 97 S.Ct. at 1855–1858; *Hollander,* 895 F.2d at 84–85; *Ottaviani v. State Univ. of New York,* 875 F.2d 365, 370–75 (2d Cir.1989), *cert. denied,*

493 U.S. 1021, 110 S.Ct. 721, 107 L.Ed.2d 740 (1990), and can be turned to.

Yusuf has failed, however, to state a claim based on selective enforcement based on the failure to give Weisman a punishment equal to that he received, or, conversely, to give him a punishment equivalent to Weisman's. First, Weisman, like Yusuf, is a male. Second, Yusuf's allegations do not demonstrate an inconsistency that warrants further inquiry. Indeed, we are not informed of the precise conduct that was charged against Yusuf. At best, Yusuf has alleged facts that suggest that Weisman's panel displayed an unusual tolerance of physical violence and may have been influenced toward leniency by Kapur's charges against Yusuf. While these facts might be admissible to show bias against males charged with sexual harassment in support of Yusuf's claim of an erroneous outcome, particularly since the Weisman and Yusuf panels had overlapping membership, they are not sufficient to allege selective enforcement.

We note again that our discussion of facts is based entirely on the allegations of the complaint, many of which were disputed by Vassar at the injunction hearing. Whether Yusuf will be able to prove what he has alleged and persuade a trier that his punishment was the result of gender bias is, of course, for future proceedings.

We affirm the dismissal of Yusuf's Section 1981 claim. We reverse the dismissal of his Title IX claim and order reinstatement of his state law claims.