**Christy BRZONKALA, Plaintiff,**

**v.**

**VIRGINIA POLYTECHNIC and STATE UNIVERSITY, et al., Defendants.**

**Civil Action No. 95–1358–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

May 7, 1996.

Eileen Marie Nause Wagner, Richmond, VA, for Christy Brzonkala, plaintiff.

Julie C. Dudley, U.S. Attorney's Office, Robert P. Crouch, Jr., U.S. Attorney, Roanoke, VA, Frank W. Hunger, John R. Tyler, Dennis G. Linder, Department of Justice, Civil Division, Washington, DC, for United States.

Kay Kurtz Heidbreder, Virginia Polytechnic Institute & State University, Blacksburg VA, for Virginia Polytechnic and State University.

William David Paxton, M. Chris Floyd, Gentry, Locke, Rakes & Moore, Roanoke, VA, Michael E. Rosman, Center for Individual Rights, Washington, DC, for Antonio J. Morrison.

Joseph Graham Painter, Jr., Blacksburg, VA, for James Landale Crawford.

Sharon R. Chickering, DLC Trial Lawyers, P.C., Roanoke, VA, Julie Goldscheid, Pamela Coukos, Deborah Ellis, NOW Legal Defense and Education Fund, New York City, Minna Kotkin, BLS Legal Services Corp., Brooklyn, NY, for NOW Legal Defense and Education Fund, amicus.

Jane Siobhan Glenn, Jones & Glenn, PLC, Roanoke, VA, for Cornell D. Brown, defendant.

Kay Kurtz Heidbreder, Virginia Polytechnic Institute & State University, Blacksburg, VA, for William E. Landsidle, in his capacity as Comptroller of the Commonwealth, defendant.

KISER, Chief Judge.

On March 1, 1996, Christy Brzonkala filed an amended complaint alleging violations of Title IX of the Education Amendment Act, 20 U.S.C. § 1681, *et seq.*, of the Violence Against Women Act, 42 U.S.C. § 13981 ("VAWA"), and of various state laws. Brzonkala brought claims against Virginia Polytechnic Institute & State University ("VPI"), William Landsidle in his capacity as Comptroller of the Commonwealth, and three VPI students. The VAWA and some state law claims involve the students, and the Title IX and breach of contract claims involve VPI and Landsidle.

All defendants have moved to dismiss Brzonkala's claims. Having permitted briefing on the VAWA issue to be extended, I now will consider only the Title IX and breach of contract claims against VPI. Therefore, I will consider only VPI and Landsidle's motion to dismiss. Brzonkala invoked this Court's jurisdiction for the Title IX claim pursuant to 28 U.S.C. § 1331. She invoked this Court's jurisdiction for the breach of contract claim against VPI pursuant to 28 U.S.C. § 1367(a). She named Landsidle as a defendant in his capacity as Comptroller of the Commonwealth of Virginia in order to comply with Va.Code Ann. § 2.1–223.1. For the purpose of the motion to dismiss the Court must accept facts alleged in the amended complaint as true.

I. Alleged Facts

Brzonkala is an adult female. She attended VPI where she was a "student athlete" and a prospect for the women's softball team. Antonio Morrison, James Crawford, and Cornell Brown are adult males. They attended VPI where they were members of the football team. On the night of September 21, 1994 and the morning of the next day, Brzonkala was sexually assaulted in a room on the third floor of her dormitory by two men whom she and Hope Handley, another female

student, had met less than a half an hour earlier and whose identities she knew only by given names and by their status as football team members. About five months later Brzonkala learned that the assaulters were Morrison and Crawford.

On September 21, Brzonkala, Handley, Morrison, and Crawford were in a room on the third floor of Brzonkala's dormitory. Handley and Crawford left the room following fifteen minutes of conversation, and Morrison immediately requested intercourse with Brzonkala. Brzonkala audibly told Morrison "no" twice. When Brzonkala rose to leave, Morrison forced her onto a bed, disrobed her, and forced her to submit to vaginal intercourse. Then Crawford came back into the room, exchanged places with Morrison, and forced Brzonkala to submit to vaginal intercourse. Morrison exchanged places with Crawford and forced Brzonkala to submit to vaginal intercourse a third time.

In the weeks following the assaults, Brzonkala became depressed, stopped attending classes, and attempted to commit suicide. A VPI licensed psychiatrist treated her, giving her anti-depressant medication. No VPI employee attempted any more than a cursory inquiry into the source of Brzonkala's mental distress. Brzonkala eventually sought retroactive withdrawal for the 1994/1995 academic year.

In February 1995, Brzonkala recognized Morrison and Crawford as the two men who forced her to submit to intercourse. At the end of April 1995, Brzonkala filed a complaint against Morrison and Crawford under VPI's Sexual Assault Policy which was formally released for dissemination to students on July 1, 1994. Brzonkala relied on VPI officials to prosecute her complaints, and, believing her failure to preserve physical evidence foreclosed any criminal charges, Brzonkala did not bring criminal charges against Morrison or Crawford. At no time did any VPI employee urge Brzonkala to reconsider her decision not to initiate a formal incident report or to reconsider her basis for thinking that criminal charges would be futile. At no time did any VPI employee report the assaults to the VPI Police or the Blacksburg Police. No incident report was filed with any policing authority.

Male sexual assault on a female is the only violent felony for which VPI authorities decline to file incident reports either with VPI Police or with Blacksburg Police. Male sexual assault on a female is the only violent felony for which VPI authorities defer to the victim's wishes about whether to file an incident report with VPI Police or Blacksburg Police.

In the first hearing, the VPI employee responsible for conducting the hearing stated that the charges were being brought under VPI's Abusive Conduct Policy, which included sexual assault. At this hearing Morrison admitted the sexual contact and admitted that Brzonkala told him "no" twice. Crawford denied any sexual conduct with Brzonkala. The VPI judicial committee found Morrison guilty of sexual assault and suspended him from school for two semesters. The committee found insufficient evidence to take action against Crawford. In May 1995, Morrison appealed the committee's sanction, and an appeals officer upheld the sanction. By the procedural rules in VPI official publications, the decision of the appeals officer is final.

In early July 1995, VPI officials Donna Lisker and Cathryn Goree called personally at Brzonkala's home in Fairfax, a four hour drive from Blacksburg, to advise Brzonkala that (a) Morrison's attorney had threatened to sue the school on due process grounds, (b) the school had deemed as having merit Morrison's *ex post facto* challenge that he was charged under the Sexual Assault Policy, not yet included in the Student Handbook, (c) the school refused to defend in court the judicial committee's decision and the subsequent appeal decision, and (d) a re-hearing under the Abusive Conduct Policy which predated the Sexual Assault Policy was required. To induce Brzonkala to agree to participate in a second hearing, Lisker and Goree assured Brzonkala that VPI believed Brzonkala's story and that the second hearing was a mere technicality to correct the school's error in bringing the original complaint under the not-yet-widely-disseminated Sexual Assault Policy.

Counsel for VPI, as members of the Office of the Attorney General, were on actual notice before 1995 that the due process arguments which Morrison claimed were groundless under Virginia law. Such an *ex post facto* challenge had already been rejected in a case in which a school was also represented by the Office of the Attorney General.

Brzonkala submitted to a second judicial committee hearing, which was *de novo* and lasted seven hours. She was required to engage her own counsel at her own expense. Preceding the second hearing, Brzonkala and her attorney were denied access to the audiotape recordings and other records while Morrison and his attorney were granted full access. VPI officials informed Brzonkala that all student testimony given at the first hearing would be accepted only by sworn affidavit. Notice was not sufficient for Brzonkala to secure these affidavits, due to her witnesses being on summer break, and so Brzonkala had to present a summary of her student witnesses' testimony through testimony of Lisker. Preceding the hearing, VPI officials admonished Brzonkala to avoid mention of Crawford in her testimony because he had been dismissed from the process. Consequently, Brzonkala was forced to give a truncated version of events.

The judicial committee found Morrison guilty of abusive conduct and reimposed the sanction of an immediate two year suspension. Morrison appealed the result, and, without notice to Brzonkala, VPI set aside the sanction against Morrison. Morrison returned to VPI for the Fall 1995 semester. Brzonkala learned through a November 30, 1995 newspaper article that the judicial committee at the second hearing had actually found Morrison guilty of a reduced charge of "using abusive language."

In her amended complaint, Brzonkala states that VPI football coach Frank Beamer, through his subordinates, his agents and/or his representatives, participated directly and indirectly in the process by which the sanction against Morrison was overturned. Brzonkala states that VPI officials coordinated a plan as early as May 1995 to allow Morrison to rejoin the all-male football team for the 1995 season. Brzonkala states that VPI employees coordinated a plan to obscure Brown's role in the rape. She states, "Solely because he is a member of [VPI's] all-male football team, Morrison was accorded affirmative advantages in the second hearing which were not accorded to plaintiff, who is a female." "Plaintiff was repeatedly and intentionally placed by [VPI] officials at a material disadvantage during the second hearing process because she is a female and because she is a victim of a specific type of sexual assault which, under Virginia common law, can only be alleged by a female against a male."

Brzonkala alleged, "Because Morrison would be present on the Virginia Tech campus during the Fall, 1995 semester and because officials of Virginia Tech had repudiated her claim that Morrison had raped her before numerous students and athletes who were aware of the facts, plaintiff feared for her personal safety and canceled her plan to return to Virginia Tech for the Fall, 1995 semester. See paragraph 42 above." Paragraph 42 states, "After plaintiff filed her charge under the school's Sexual Assault Policy, she learned that a Virginia Tech student overheard an unidentified male Virginia Tech athlete advise defendant Crawford that he should have 'killed the bitch.'"

VPI is required to make public the nature and number of crimes involving its students, for which there are incident reports. VPI reported four rapes in 1992 and one in 1993. Between 1992 and 1993, thirteen rapes were adjudicated at VPI through internal procedures, with nine resulting in disciplinary action against the accused student.

II. Standard

Rule 12(b)(6) dismissals are generally disfavored and only granted when it appears beyond doubt that a plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). I may only test plaintiff's complaint for any legal deficiency and must construe the factual allegations in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Schatz v. Rosenberg*, 943 F.2d 485,

489 (4th Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992).

## III. Discussion

■ Brzonkala alleges that VPI violated Title IX.[1] Title IX states in part as follows:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681. This section provides an implied private cause of action. *Cannon v. University of Chicago*, 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979). Courts have applied the same scheme of analysis for issues arising under this statute as in Title VII cases. *See, e.g., Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203, 206 (4th Cir.1994).

### A. On the Basis of Sex

■ To state a cause of action under the above statutory section, the act by the school must be "on the basis of sex." 20 U.S.C. § 1681.

A plaintiff alleging ... gender discrimination by a university must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.... [A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss. The fatal gap is ... the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias. A plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.

*Yusuf v. Vassar College*, 35 F.3d 709, 713–15 (2d Cir.1994) (citations omitted). In *Yusuf*, plaintiff Syed Yusuf, a male student, brought a claim against Vassar College alleging in part sex discrimination in violation of Title IX arising out of his discipline for allegedly sexually harassing his roommate's girlfriend. *Id.* at 711. The girlfriend pursued a charge of sexual harassment only after Yusuf made it clear that he would not drop criminal charges against his roommate. *Id.* at 712. The Second Circuit reversed the trial court's dismissal of Yusuf's Title IX claim. *Id.* at 716. Yusuf's complaint alleged

[ (1) ] that a false and somewhat stale charge of sexual harassment was made against him only after he pursued criminal charges for a brutal assault by the complainant's boyfriend[,] ... [ (2) ] that he was on good terms with the complainant after the alleged incidents of sexual harassment and until he pursued those criminal charges[,] ... [ (3) ] that various actions by the presiding official of the disciplinary tribunal prevented him from fully defending himself[,] ... [and (4) ] that males accused of sexual harassment at Vassar are "historically and systematically" and "invariably found guilty, regardless of the evidence, or lack thereof."

*Id.* at 716. The court placed particular importance on the fourth allegation, stating, "The allegation that males invariably lose when charged with sexual harassment at Vassar provides a verifiable causal connection similar to the use of statistical evidence in an employment case." *Id.*

The case at hand differs from *Yusuf* in important ways. An important distinction between Yusuf and Brzonkala was their relationship to the college judiciary proceedings. Yusuf was a defendant whose status at the college was directly affected by the alleged biased proceeding which favored the female complaining party. The reverse is true here. Brzonkala, as the complaining witness was in no direct jeopardy of having her status at VPI affected. Thus, the connection between her alleged injuries and the actions of VPI

---

1. Brzonkala makes separate Title IX claims against VPI for disparate treatment and disparate impact gender discrimination. I will analyze these claims together, considering the allegations supporting a Title IX claim generally.

are more tenuous and require factual allegations that bridge the "fatal gap." *Id.* at 715.

The two cases differ in other important ways. First, Brzonkala does not present any statistical allegations from which I can reasonably infer that VPI's conduct was based on illegal discriminatory intent. Brzonkala's strongest statistical allegations lack relevance and do not indicate discriminatory intent in the same manner as allegation number four above. In fact, the only relevant statistical evidence presented by Brzonkala indicates a lack of discriminatory intent. Second, Brzonkala supports her claim that gender caused the discrimination with a false comparison based on VPI's treatment of her compared to its treatment of Morrison during the judiciary proceedings. Brzonkala and Morrison were not similarly situated with regard to these proceedings, and so any comparison is of little relevance. Third, Brzonkala presents allegations from which I can reasonably infer a controlling intent by VPI which lacks any illegal discriminatory animus whatsoever. These include allegations indicating that VPI officials influenced the judicial proceedings in order to permit Morrison to play football.

### 1. Statistical Allegations

■ Brzonkala does not present statistical allegations from which I can even reasonably glean discriminatory intent. She states that VPI authorities treat the violent felony of sexual assault by male students against female students differently from all other violent felonies. Even if substantiated, such a statement would not indicate gender discrimination by VPI. There are much more plausible reasons than discrimination for VPI's disparate treatment of these unusual cases. Rape is very different from other violent felonies, and it is understandable that VPI officials would treat rape differently without any discriminatory animus whatsoever. Indeed, the strongest inference from this allegation is that VPI is sensitive to victims' feelings. For example, VPI officials likely would not want to push raped females into further proceedings when it is undoubtedly often difficult for these females to bring such matters to the attention of school officials in

the first place. It is understandable that VPI officials would defer to a sexual assault victim's wishes about whether to file an incident report with police while at the same time not deferring to other violent felony victim's wishes. Some people, including victims, understand rape to socially stigmatize victims. While such a stigma is undeserved, such a perception certainly could warrant a different level of influence by VPI over rape victims than other violent crime victims. Therefore, VPI's less strong influence over rape victims than over other victims of violent felonies is of questionable relevance. The only clearly relevant statistical evidence indicates a lack of illegal discriminatory intent by VPI. Brzonkala stated in her complaint that in 1992 and 1993, VPI adjudicated thirteen rapes with nine resulting in disciplinary action against the accused.

### 2. False Comparison

Brzonkala relies largely on a comparison of VPI's treatment of her to its treatment of Morrison and Crawford. Brzonkala indicates that these male athletes were given preferential treatment over her, a female athlete. The relative positions of the male football players and Brzonkala were not the same. Brzonkala does not allege that her status as a student athlete was affected or even considered in VPI's handling of the charges. As the charging witness, Brzonkala's status as a student and athlete was not in jeopardy. Although understandably disappointed in the ultimate outcome of the proceedings against Morrison and Crawford, her status at VPI was in no way affected.

The fact that the parties were all VPI athletes who were somehow involved in the same VPI judiciary proceeding is not enough. Unlike Morrison and Crawford, Brzonkala was not even a party to the proceeding. She was comparable to a victim of a crime, with VPI acting as the prosecutor. Unlike Morrison and Crawford, she was not facing judiciary charges or possible suspension from VPI. Had there been the same cross charges between Brzonkala and Morrison and had Brzonkala been treated unfavorably and Morrison favorably, then the comparison of their treatment would indicate discrimina-

tion. Had Brzonkala faced judiciary charges for assault, had Morrison later faced similar charges, and had VPI suspended Brzonkala but not Morrison, then comparison of their treatment would indicate discrimination. However, Brzonkala was not in a situation similar to Morrison and Crawford and so an inference of illegal discriminatory treatment from the comparison is unjustified.

### 3. Permissible Intent

Brzonkala makes a conclusory allegation that Morrison and Crawford received favorable treatment because they are males, but her factual allegations do not support such an inference. Brzonkala argues that VPI gave the football players preferential treatment so that they could play on the all-male football team. By this argument, the fact that Brzonkala is female is incidental to VPI's intent. Gender is of little, if any, consequence to VPI's intent, and Brzonkala's gender is of no consequence. For example, if a football player was in trouble for battering a VPI male softball player and was facing suspension, VPI could have the same reason for trying to influence any judicial proceedings. If a female softball player was facing suspension, VPI could have the same reason for trying to influence the judicial proceedings. It just so happens that Morrison was on an all-male team and in trouble for violent conduct that affects females. VPI's intent was to allow an athlete to play on its team. This intent was proximately based on Morrison's athletic status, not the facts that he is a male and that Brzonkala is a female. The genders involved are inconsequential to VPI's proximate intent, and so Brzonkala has failed to allege the necessary discriminatory intent.

### B. Hostile Environment

■ Although Brzonkala does not specifically argue this point, it is possible to glean from her complaint an allegation that VPI had a hand in permitting a hostile school environment based on Brzonkala's gender. Brzonkala alleged that because VPI permitted Morrison to be present on the VPI campus during the Fall 1995 semester, she feared for her personal safety and canceled her plan to return to VPI for the Fall 1995

semester. She cites paragraph 42 of her complaint which states, "After plaintiff filed her charge under the school's Sexual Assault Policy, she learned that a Virginia Tech student overheard an unidentified male Virginia tech athlete advise defendant Crawford that he should have 'killed the bitch.' "

In *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), in the context of Title VII, the Supreme Court stated, "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21–22, 114 S.Ct. at 370. Therefore, the Supreme Court listed two requirements: (1) conduct that objectively created a hostile or abusive work environment and (2) the victim's subjective perception that an environment is abusive.

The case at hand is not an illegal hostile environment situation. Brzonkala fails to meet both requirements. First, VPI did not create or implicitly condone a hostile environment. In fact, the hostile environment that Brzonkala alleged never occurred. Brzonkala left VPI due to her concern of possible future reprisal in reaction to her pressing charges. She did not allege that this future reprisal actually occurred. Second, Brzonkala did not perceive that the environment was in fact abusive, but only that it might become abusive in the future.

### IV. Conclusion

Considering Brzonkala's allegations either together or *seriatim,* they do not allege facts which will support a conclusion that VPI acted with an anti-female animus. They simply do not rise to "a plausible inference of [sexually] discriminatory intent." *Yusuf* at 713. In the final analysis, Brzonkala has alleged a flawed judiciary proceeding, the outcome of which disappointed her, but she has failed to allege facts that would support

the necessary gender bias to state a claim under Title IX.

Thus, I will dismiss Brzonkala's Title IX claim. I will dismiss the state law breach of contract claim for lack of jurisdiction. For the stated reasons, I will grant VPI and Landsidle's motion to dismiss. An appropriate order will be entered.