**Jennifer COOPER, Plaintiff,**

v.

**GUSTAVUS ADOLPHUS COLLEGE
and Karle Erickson, Defendants.**

Civil No. 4–95–684.

United States District Court,
D. Minnesota,
Fourth Division.

March 28, 1997.

Susan M. Robiner and Daniel L. Palmquist, Leonard Street & Deinard, Minneapolis, MN, for defendant Gustavus Adolphus College and Axel Steuer.

Paul R. Haik, Krebsbach & Haik, Minneapolis, MN, for defendant Karle Erickson.

## MEMORANDUM OPINION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Karle Erickson was a tenured professor and a choir director at Gustavus Adolphus College ("College") until he was dismissed by the College for violating its Sexual Harassment Policy through his sexual contact with a student, plaintiff Jennifer Cooper. Cooper has settled and dismissed her claims against both defendants. The remaining claims are those of Erickson against the College and its President for violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681, *et seq.*, breach of contract, defamation, and tortious interference with contract. Cross-motions for summary judgment are before the Court. For the reasons set forth below, the Court grants summary judgment on all of the motions of the College and its President, except for certain contract claims.

### I. Title IX Claims

■ Erickson brings claims under Title IX, alleging both that the procedural unfairness of his dismissal process and its contamination with gender bias are actionable under Title IX. He has not brought any claims under Title VII of the Civil Rights Act of 1964. Title IX prohibits sex discrimination on the part of educational programs that receive federal funds. The remedy for discrimination explicitly set forth in the statute is the denial of federal funding. The courts have recognized an implied cause of action on behalf of students and prospective students who are discriminated against in education. *Franklin v. Gwinnett County, Pub. Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *Cannon v. Univ. of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Yusuf v. Vassar College,* 35 F.3d 709 (2d Cir.1994). Furthermore, a lawsuit under Title IX may challenge the validity of administrative regulations terminating federal funding of an educational institution that discriminated on the basis of sex in employment practices. *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) ("*Bell*").

However, most courts have rejected the theory that employees of an educational institution have an implied cause of action for damages under Title IX. *Lakoski v. James,* 66 F.3d 751, 754 (5th Cir.1995); *Howard v. Bd. of Educ. Sycamore Community Unit,* 893 F.Supp. 808, 815 (N.D.Ill.1995); *Wedding v. Univ. of Toledo,* 862 F.Supp. 201, 203–04 (N.D.Ohio 1994); *Storey v. Bd. of Regents,* 604 F.Supp. 1200, 1205 (W.D.Wis.1985).[1] These courts have all reached the conclusion that since Title VII provides a comprehensive and carefully balanced remedial mechanism for redressing employment discrimination, and since Title IX does not clearly imply a private cause of action for damages for employment discrimination, none should be created by the courts.[2]

The only federal case cited by the parties to the contrary is *Henschke v. New York Hospital–Cornell Medical Ctr.,* 821 F.Supp. 166, 172 (S.D.N.Y.1993). This case sums the private cause of action that students and prospective students have under *Cannon* and *Franklin* together with the cause of action to challenge rules related to federal funding and employment discrimination under *Bell. Id.* at 172. The case fails to appropriately consider the impact of the existence of Title VII remedies for employment discrimination. The Court will join others in rejecting the analysis of *Henschke* and concluding that there is no private action for damages available to a college employee under Title IX for sex discrimination. *See, e.g., Lakoski,* 66 F.3d at 754.

Erickson also argues that Title IX and its implementing rule create federal rights to a fair process for faculty members accused of sexual harassment. The theory is that Title IX and 34 C.F.R. § 106.8(b) require an equitable grievance procedure for handling sexual harassment, that this is a federal mandate requiring recipient educational programs to adopt and implement a process which is equitable to employees accused of discrimination as well as their accusers, that the process adopted and implemented by the College failed to meet this requirement of federal law, and that there is a private cause of action to remedy this wrong.

Erickson relies upon a case from a state trial court in New York, *Starishevsky v. Hofstra Univ.,* 161 Misc.2d 137, 612 N.Y.S.2d 794, (N.Y.Sup.Ct.1994). This case is flawed in that it mixes together principles of federal and state law and fails to distinctly analyze federal law, but the facts are the closest to the case at bar. Starishevsky was a Hofstra University administrator who was dismissed following charges of sexual harassment pursued through University procedures created under Title IX and its implementing rule. This rule requires educational programs receiving federal funds to adopt grievance procedures providing for "prompt and equitable resolution of student and employee complaints" of sex discrimination. 34 C.F.R. § 106.8(b). Starishevsky successfully challenged the fairness of the University's procedures on grounds analogous to the issues raised by Erickson.

The court began its analysis by citing a principle of New York law that a university's decision to discipline a faculty member must be predicated on procedures which are fair and reasonable and which lend themselves to a reliable determination. *Starishevsky,* 161 Misc.2d at 145, 612 N.Y.S.2d 794. The court cited numerous cases developing the particulars of this right under New York law for a fair hearing for faculty members. *Id.* The *Starishevsky* court then observed that federal rules require a "prompt and equitable" grievance procedure, asserting, without citation, that this requires a procedure "fundamentally fair to both the accused and the accuser." *Id.* at 146, 612 N.Y.S.2d 794. The

---

**1.** The Court of Appeals for the Eighth Circuit has been presented with a claim for damages for employment discrimination under Title IX. *See, O'Connor v. Peru State College,* 781 F.2d 632 (8th Cir.1986). However, that decision did not determine whether such a claim is generally cognizable, because it was dismissed on the grounds that the employee, an athletic coach, did not work for a federally funded program. *Id.* at 639–42.

**2.** The Eighth Circuit has not addressed this issue. *See Brine v. Univ. of Iowa,* 90 F.3d 271, 276 (8th Cir.1996) (university did not "challenge the proposition that a private right of action exists under Title IX").

194

court then bundled together the federal and New York law to recognize a right of one accused of sexual harassment to a fair hearing with certain procedures that Hofstra University had failed to provide. *Id.* at 146–47, 612 N.Y.S.2d 794. In an additional analysis, the court found the dismissal to be arbitrary and capricious under a New York procedure for judicial review of dismissals by educational institutions. *Id.* at 147–50, 612 N.Y.S.2d 794 (citing CPLR Article 78). Significantly, the case came before the court as a petition for judicial review under Article 78 and Title IX was merely referred to as one of the sources of the petitioner's rights, not as the vehicle for a cause of action.

*Starishevsky* is a New York state case applying New York law, in which the federal issue is not analyzed distinctly. Erickson has not argued that employees of private colleges in Minnesota have rights comparable to those which appear to exist in New York. Furthermore, even if the Court were to agree that Title IX requires that any grievance process be fair to an accused employee, Erickson has failed to demonstrate that such a right may be enforced through a private cause of action.

Indeed, a statutory right to due process in grievance proceedings under Title IX has been implicitly rejected in *Yusuf v. Vassar College,* 35 F.3d 709 (2d Cir.1994). There, a student who had been found to have committed sexual harassment and suspended for that reason sued under Title IX to challenge his suspension. The Second Circuit held that alleged flaws in a sexual harassment procedure were not actionable in the absence of a "particularized allegation relating to a causal connection between the flawed outcome and gender bias." *Id.* at 715. Under *Yusuf,* there is no Title IX statutory due process right separate from a right to be free from discrimination, even for a student. This must be all the more true for an employee, whose action for damages for discrimination must be found in Title VII, not Title IX.

The Court rejects any claim for employment discrimination on the basis of sex under Title IX, as Title VII is the only remedy for such a claim. Furthermore, the Court holds that there is no statutory right to due pro-

cess in grievance proceedings under Title IX separate from its prohibition of discrimination. On the Title IX claims, the Court grants summary judgment to the College and denies Erickson's motion for summary judgment.

## II. Contract Claims

■ The contract that governs Erickson's employment is the Faculty Manual. This Faculty Manual includes certain appendixes that deal with specific issues. Appendix B governs dismissal proceedings. It provides for procedural rights which Erickson claims the College violated. Appendix D creates a discrimination and sexual harassment grievance procedure. If this matter were to go to trial, the College would dispute whether Appendix D applied during the relevant period, or whether it was superseded by the All College Policy on Sexual Harassment. However, in making this motion for summary judgment, the College concedes that this is a factual dispute, and it argues that even if Appendix D is applied, all of Erickson's rights under it were respected.

Appendix D provides for both an informal and a formal process for handling sexual harassment or other discrimination grievances. The informal process requires very little, and there is no dispute that its requirements were met. The formal process requires many steps which the College admits it did not follow, such as a written complaint served on the respondent and an independent hearing officer.

The critical portion of Appendix D is the part that specifies when a formal process is required:

> If the matter is not resolved to the complainant's satisfaction through this informal process within 10 working days, the complainant may proceed to file a formal discrimination/sexual harassment grievance.

This unambiguously gives the complainant, not the accused, sole discretion to initiate a formal process. This contractual term must be enforced by the Court. The Court finds that Erickson has not raised a genuine issue

of fact that the College failed to comply with Appendix D of the Faculty Manual.

■ Appendix B provides that a faculty member with continuous tenure facing dismissal is entitled to:

1) settlement discussions with administrative officers;

2) settlement discussions with a panel designated by the administration, the faculty member, and the Faculty Senate;

3) presentation of a statement of charges by the President or his delegate;

4) a hearing by the Faculty Senate;

5) an opportunity to respond in writing to the charges;

6) the right to remove members of the Faculty Senate from the hearing (two preemptory strikes, and others for cause);

7) notice of the hearing with specific charges in writing at least 20 days prior to the hearing;

8) a prehearing meeting;

9) a consultation with the Faculty Senate on whether to close the hearing;

10) representation by counsel;

11) observation of the hearing by a representative of an education association;

12) a hearing where any probative evidence may be admitted, without regard to strict rules of legal evidence;

13) an opportunity to obtain necessary witnesses and documentary or other evidence, with the administration cooperating with the Faculty Senate in securing witnesses and making available documentary and other evidence;

14) the right to confront and cross-examine all witnesses;

15) a verbatim record of the hearing; and

16) a right to have the administration prove by a preponderance of the evidence to the Faculty Senate that it had adequate cause for dismissal.

Furthermore, Appendix B provides that, except for administrative facts about matters such as the time of the hearing and such, public statements and publicity about a case are to be avoided by all parties as far as possible until the proceedings have been completed.

A review of the facts shows that Erickson has raised a genuine issue concerning whether his contractual rights were violated insofar as the administration did not allow him to have access to certain documents and witnesses. Erickson was not given a copy of the 12 page written summary of the allegations written by Jennifer Cooper. He was not given investigative notes of the investigator Ruth Johnson. Erickson did not have an opportunity to "obtain necessary witnesses," in particular, Jennifer Cooper. Based on these facts, the Court denies summary judgment as to claims that the College violated Appendix B of the Faculty Manual. However, the factual issues involved in this claim also preclude granting Erickson's motion for summary judgment.

## III. Tortious Interference with Contract

■ Erickson alleges that Axel Steuer, the President of the College, intentionally interfered with his employment contract with the College. Steuer moves for summary judgment on the grounds that Steuer acted only in his capacity as President of the College.

■ A corporate officer or agent is privileged to interfere with or cause a breach of another employee's employment contract with the company, if that person acts in good faith believing that his or her actions are in furtherance of the company's business. *Nordling v. Northern States Power Co.,* 478 N.W.2d 498, 506 (Minn.1991). This privilege may be lost if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff. *Id.*

The allegations against Steuer are all identical to the alleged breaches of the contract. This includes Steuer's actions in instructing the sexual harassment investigator concerning which procedures to follow, suspending Erickson without consulting the Faculty Senate, denying Erickson access to certain written records (such as the statement of the complainant and investigator's notes), and redacting names of students from the public version of a report concerning allegations

against Erickson. All of these actions Steuer clearly took in his role as President. The only evidence of malice is that Erickson believes malice could be inferred from the totality of the alleged contract breaches. The uncontradicted testimony of Steuer is that he was personally close with Erickson prior to the allegations of sexual harassment, and that it was with great personal regret that he took actions against him in a professional role. The Court finds that Erickson has not raised a genuine issue that Steuer acted with malice. Consequently, Steuer's motion for summary judgment on the tortious interference claim is granted.

## IV. Defamation

The statements that Steuer made regarding Erickson were protected by a qualified privilege because he only made statements for proper purposes in his role as a college president. *Harvet v. Unity Medical Center,* 428 N.W.2d 574, 578 (Minn.App. 1988). This qualified privilege can only be defeated by a showing of actual malice. *Id.* Since Erickson cannot raise a genuine issue that Steuer acted with malice, Steuer's motion for summary judgment on the defamation claims is granted.

## ORDER

Based upon all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1) The Motion of Erickson for partial summary judgment [Docket No. 96] is **DENIED;**

2) The Motion of Gustavus Adolphus for summary judgment on Erickson's Title IX claim [Docket No. 157] is **GRANTED;** and

3) The Motion of Gustavus Adolphus and Steuer for summary judgment [Docket No. 168] is **DENIED** as to claims of breach of contract Appendix B and **GRANTED** as to all other claims.