**Stephen T. HALEY, II, Plaintiff,**

**v.**

**VIRGINIA COMMONWEALTH UNIVERSITY, Defendant.**

**Civil Action No. 3:96CV442.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 19, 1996.

Jay Joseph Levit, Levit & Mann, Eileen N. Wagner, Richmond, VA, for Plaintiff.

Pamela Finley Boston, David Lee Ross, Virginia Commonwealth University, Office of the Attorney General, Richmond, VA, for Defendant.

## *MEMORANDUM OPINION*

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the motion of the defendant, Virginia Commonwealth University, to dismiss and/or for summary judgment. The plaintiff, Stephen Haley, has filed a motion for summary judgment as well. For the reasons stated below, the Court grants the defendant's motion and dismisses the case with prejudice.

## Introduction

Stephen Haley ("Haley") was a graduate student and employee at the Medical College of Virginia, a division of Virginia Commonwealth University ("VCU"), a state university. A fellow student and employee, who has intervened as a plaintiff in this case under the pseudonym Jane Doe ("Doe"), filed charges of sexual harassment against him. Haley was found guilty and was separated from the school for two years. Haley has sued VCU for damages and injunctive relief on theories of: (1) sex discrimination and denial of equal benefits in violation of Title IX, 20 U.S.C. § 1681, et seq.; (2) denial of equal protection and due process in violation of the Fourteenth Amendment; and (3) sex discrimination and failure to protect him from unfounded charges of discrimination in violation of state law.

The gist of Haley's complaint is that VCU unfairly railroaded him through the procedures it uses to prosecute claims of sexual harassment, and that it did so pursuant to a discriminatory policy whereby the school presumes that allegations of sexual harassment are valid, particularly where the alleged harasser is male and the victim is female. VCU's motion to dismiss and/or for summary judgment is based on several theories: (1) that suing VCU is the equivalent of suing the Commonwealth of Virginia, and that as a result VCU cannot be sued for alleged Fourteenth Amendment violations; (2) that, again because suing VCU is the same as suing the Commonwealth, the Eleventh Amendment provides immunity from suit on the state law claims; and (3) that there is no evidence to support Haley's discrimination claim, or his other claims for that matter.

## Factual Background

In January of 1992, Stephen Haley was a student at VCU doing some of his studies in the laboratory of Dr. Andras Szakal. Sometime that month, Jane Doe began working alongside him. Both received wages and tuition credit for their work. According to Doe, Haley subjected her to verbal and physical abuse and harassment throughout her employment in the lab (about 2½ years). She complained to Dr. Szakal on more than one occasion, but was never satisfied with the results of any action taken. Thus, in July of 1994, she submitted a written charge of sexual harassment and took a leave of absence from school. She filed a formal grievance in September, 1994.

VCU proceeded as provided under its written Rules and Procedures. It began by assigning Jennifer Chapman, assistant director of the recreational sports department, to investigate Doe's complaint. After more than two months of trying unsuccessfully to set up a meeting with Haley, Chapman had Dr. Robert Clifton, the Dean of Student Affairs and Administrator of the Rules and Procedures, threaten to proceed without Haley's input. Then Haley submitted an affidavit giving his story. He also met with Chapman, bringing two attorneys, but at the meeting he apparently just submitted his affidavit.

Clifton reviewed the investigation, determined that Haley was guilty of violating that part of the University Rules and Procedures providing that no person shall willfully "harass or intimidate any person," and imposed a sanction of probation plus a requirement that Haley seek counseling. He notified Haley of his decision and explained to him that he had a right under the VCU Rules and Procedures to appeal the decision to the University Hearing Board.

Haley exercised this right of appeal and his case was referred to the Hearing Board for the presentation of witnesses and evidence. He was provided with a hearing date, given an explanation of the format, and told he could contact Dr. Ruth Epps, the Chairman of the Hearing Board, if he had any questions. After one postponement per Haley's request, the hearing was held on March 24, 1995. The Board allowed Haley to present evidence on his own behalf, despite his failure to submit the evidence to Clifton before the morning of the hearing as he was required to do by the Rules. The Board followed its written procedure regarding the role of an accused student's attorneys: Haley was only allowed to use one, and that one

attorney's role was limited to that of advisor. The attorney could not make arguments or examine or cross-examine witnesses.

By letter of March 29, 1995, the Hearing Board informed Haley that it, too, found him guilty of sexual harassment and that his sanction was to be a two-year separation from the University. It appears that the sanction was increased from the probation imposed by Dean Clifton so as to allow Jane Doe to complete her studies at VCU without having to come into contact with Haley. The letter cited three specific instances of conduct that the Hearing Board felt created a hostile environment and were harassing in nature, but also referred to "other statements detailing [Haley's] past behavior" as "contribut[ing] significantly to the creation of the above mentioned intimidating, hostile and offensive working and educational environment."

By letter of April 7, Haley appealed the Hearing Board's decision to the University Appeal Board. That Board notified him on April 14 that it would hear his appeal on May 10, 1995. Clifton gave Haley a description of the appeal procedure and format, offered him copies of the audio tapes from his hearing before the Hearing Board, and gave him the name and phone number of the Chairman of the Appeal Board, Dr. Charles Janus. Haley attempted to get the hearing postponed so that he could get a written transcript of his Hearing Board proceedings, but his request was denied. He then waived his right to present his case orally and requested that he be permitted to submit his position in writing by May 15. It appears that this request was ignored, for the hearing, at which Haley failed to appear, proceeded on May 10. On May 12 the Appeal Board recommended to Dr. Eugene Trani, President of VCU, that he affirm the Hearing Board's decision.

On May 9, Haley contacted Dr. Trani, asking him not to make any final decision until he had an opportunity to submit his position in writing and asking for a meeting between Dr. Trani, Haley, and Haley's attorney. Dr. Trani seems to have ignored the request for a meeting, but he had reviewed Haley's documentation when, on May 30, he accepted the recommendation of the University Appeal Board and affirmed the finding of Haley's guilt and affirmed his punishment.

Haley does not dispute that the chronology of events was as described above. However, he contends that various aspects of VCU's set written procedures, and of his actual proceedings, were discriminatory, flawed, and unfair.

Haley makes two complaints about VCU's written policies. The first is that VCU's sexual harassment guide for faculty, staff, and students includes a statement that "the preponderance of sexual harassment complaints are valid." The statement goes on to say that students may charge faculty members, or employees may charge supervisors, with meritless accusations of harassment, but it does not specify that students might make spurious allegations against one another. Haley claims that these statements show that VCU presumes the validity of all sexual harassment complaints except perhaps where they are filed by students or employees against faculty members or supervisors. According to Haley, these statements show that VCU is unaware of or at least does not care about the possibility of spurious claims by students against one another.

Haley's second complaint about VCU's written policies involves the examples of sexual harassment included in the same sexual harassment guide for faculty, staff, and students. Four of the six examples involve male harassers and female victims. One of the others involves a woman harassing a man, and the final example involves two homosexual men. Haley argues from these examples that VCU has a bias in favor of women's complaints against men, and that its policy of presuming the validity of sexual harassment complaints between students has a much more detrimental impact on men than it does on women.

Haley makes the following complaints about the way Doe's complaint against him was handled:

(1) That two authors of the policy statements complained of above were involved in the investigation of his claim.

(2) That the Hearing Board's finding of guilt was based entirely on three incidents acknowledged by him in his affidavit, and not on any testimony from Doe or any other witnesses, a point Haley views as important because he further contends that Doe's affidavits and live testimony were contradictory and thus unreliable.

(3) That the first of these three cited instances occurred in the spring of 1992, and was thus time-barred due to VCU's two-year statute of limitations on bringing complaints of sexual harassment (Doe did not bring charges against Haley until July, 1994).

(4) That none of the three cited instances occurred within ten months of one another, making them too isolated and nonpervasive to constitute sexual harassment, a point Haley alleges is particularly strong if the time-barred incident is dropped from the picture.

(5) That Haley's lawyer was not allowed to speak at his hearing, while Doe's lawyer was allowed to do so repeatedly.

(6) That Dean Clifton, who was supposed to be a neutral administrator, argued vociferously on Doe's behalf before the Hearing Board and made unfounded and prejudicial allegations concerning Haley's cooperativeness.

(7) That Haley was effectively denied his right to counsel before the Appeal Board—a right he argues he was guaranteed—due to the Board's arbitrary refusal to grant the continuance he sought.

### Analysis

**VCU's Motion to Dismiss:**

■ Haley sets forth the proper jurisdictional basis for his Title IX claim. He also sets forth sufficient facts in his complaint to state a claim under 20 U.S.C. § 1681. Further, there is no reason to believe that VCU is not a proper defendant to a Title IX action. Thus, this claim survives VCU's motion to dismiss. See *Yusuf v. Vassar College*, 35 F.3d 709 (2nd Cir.1994) (ruling, on facts very similar to those in the case at bar, that it was error for the District Court to grant the defendant's motion to dismiss the plaintiff's Title IX claim for allegedly discriminatory university disciplinary proceedings).

■ Haley's complaint purports to bring state law claims under the Court's pendent jurisdiction. However, the Eleventh Amendment precludes any suit which seeks relief against a sovereign state in federal court unless Congress or the state has waived the state's immunity from such suit. *Seminole Tribe of Florida v. Florida*, —— U.S. ——, ——————, 116 S.Ct. 1114, 1122–23, 134 L.Ed.2d 252, 265–66 (1996). It does not matter whether the plaintiff is a citizen of the same state or a different one, or whether the relief sought is monetary or injunctive. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100–102, 104 S.Ct. 900, 907–909, 79 L.Ed.2d 67 (1984). Suing VCU is the functional and legal equivalent of suing the Commonwealth of Virginia, and the school thus shares the state's Eleventh Amendment immunity absent a waiver. See, e.g., *Huang v. Board of Governors of the University of North Carolina*, 902 F.2d 1134, 1138 (4th Cir.1990). Neither Congress, nor VCU, nor the Commonwealth of Virginia has waived this immunity as regards Haley's state law claims. See *Id.* (requiring "the most express language or [ ] overwhelming implication" to find a waiver). Therefore, VCU's motion to dismiss must be granted as to the state law claims. Even were the Court able to hear these state law claims, it would decline to exercise its supplemental jurisdiction to hear them because, as is discussed below, all of Haley's federal claims are being dismissed with prejudice. See 28 U.S.C. § 1367(c)(3).

■ The rest of Haley's complaint is premised upon violations of the equal protection and due process clauses of the Fourteenth Amendment. He cites no jurisdictional basis for these claims other than 28 U.S.C. § 1331, but it is presumed that the basis is 42 U.S.C. § 1983. The United States Supreme Court has stated unequivocally that a state cannot be sued under § 1983, the rea-

son being that § 1983 does not constitute a waiver of the state's Eleventh Amendment immunity. *Will v. Michigan Department of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Because, as noted above, suing VCU is the functional and legal equivalent of suing the state, VCU's motion to dismiss must also be granted as to Haley's claim for alleged Fourteenth Amendment violations.

VCU's motion to dismiss having been considered and ruled upon, Haley is left only with his claim for relief under Title IX.

### VCU's Motion for Summary Judgment:

Summary judgment shall be granted where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.Proc. 56(c). Accordingly, summary judgment is appropriate against a party who, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In opposing a properly supported motion for summary judgment, a plaintiff cannot merely rely on the allegations and denials in his pleadings. Rather, he must set forth specific facts showing that there are genuine issues for trial by presenting affirmative evidence from which a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). This must be done as to every element of the plaintiff's claim. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

As stated above, Haley's complaint properly sets forth a claim for relief under Title IX. However, the pleadings, affidavits, transcripts, and other evidence now before the Court show that there is no genuine issue of material fact as to Haley's Title IX claim and that VCU is therefore entitled to judgment as a matter of law.

■ Because Title IX, which prohibits sex discrimination in education, was enacted to supplement the Civil Rights Act of 1964, courts have interpreted it by looking to the case law developed under Titles VI and VII. See *Yusuf v. Vassar College,* 35 F.3d 709, 714 (2nd Cir.1994). Litigation under the Age Discrimination in Employment Act is instructive as well. The substantive elements of a federal discrimination claim are (1) that the plaintiff is a member of a protected class, (2) that the plaintiff suffered an unfavorable action, and (3) that but for the plaintiff's membership in the protected class, the adverse action would not have been made. *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 238 (4th Cir.1982). This third element requires proof of discriminatory intent. *Id.; International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Because of this requirement, it is not sufficient for Haley to prevail on his Title IX claim for him to prove that the finding of his guilt or his allegedly severe punishment resulted from procedurally or otherwise flawed proceedings. Rather, he must show a causal connection between the allegedly flawed outcome and the alleged gender bias. *Yusuf,* 35 F.3d at 715.

■ In discrimination cases, it is commonly the situation that the plaintiff cannot adduce direct evidence of discriminatory motive. Haley finds himself in this situation, for he has failed to produce any direct evidence of gender bias. The closest he can come is his citation to that part of the VCU Rules and Procedures that gives four examples of males harassing females and only one of a woman harassing a man (and a sixth example involving one homosexual man harassing another). Even if this citation evidenced a gender bias, it is insufficient evidence standing alone to support Haley's allegations. A plaintiff must be able to adduce substantial evidence to support his contentions; a mere iota of evidence, followed by conclusory allegations of discriminatory intent, will not suffice. See Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure, Civil 2d,* § 2727, ns. 42–44 and accompanying text (1983); see also *O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 548–49

(4th Cir.1995) (isolated statements about age insufficient evidence for ADA claim to survive motion for summary judgment).

 Haley might suggest that two other allegations could be construed as evidencing a gender bias: that Does' attorney was allowed to speak while Haley's was not, and that Dean Clifton appeared biased against him throughout the proceedings. However, these allegations at best reflect a bias against people accused of sexual harassment and in favor of victims and indicate nothing about gender discrimination. Comparing Haley's attorney to Doe's attorney is like comparing apples and oranges, for Haley and Doe were not similarly situated at the proceedings. In addition, Doe's attorney's "participation" in the proceedings was so minimal as to be practically irrelevant, and it went largely unobjected to by Haley or his counsel.[1] That Doe's attorney was favored over Haley's attorney is thus a frivolous claim. Haley's claim regarding Dean Clifton is simply another version of his claim that VCU presumes that sexual harassment claims are valid and by no means reflects a gender bias. In fact, from his complaints about the examples of sexual harassment in the VCU sexual harassment guide, it appears to be Haley's contention that an equal amount of sexual harassment is directed from women to men, which would make a bias against accused students absolutely gender-neutral even under Haley's theory of the case. That Haley has a fundamental misunderstanding of what it takes to prove a discrimination claim is evident from his own pleadings: he states in his brief responding to defendant's motion for summary judgment, and supporting his cross-motion for summary judgment, that a "presumption that the preponderance of sexual harassment charges are valid ... is gender discriminatory even if the victim were male and the harasser were female, and even in the cases of homosexuals." Plaintiff's

brief at 15. The mere fact that sexual harassment proceedings have as their subject sexual behavior and speech does not itself implicate sex discrimination, even if a University does have a practice of railroading accused students. At any rate, the VCU Rules and Procedures do not suggest that Dean Clifton was supposed to take a neutral role in the proceedings as Haley would have us believe. While the Rules and Procedures do state that the administrator's role at the *informal* complaint stage is that of a "neutral mediator to resolve the complaint," they prescribe nothing about neutrality at the formal complaint stage. Because the hearing board acts as a neutral party to resolve the complaint, there is no reason to believe that Dean Clifton was required to be neutral. To the contrary, it appears from the record that it may have actually been Dean Clifton's role in the proceedings before the Hearing Board to help present evidence against Mr. Haley, given that there was no formal prosecutor.

In discrimination cases analogous to Haley's, where there is no direct proof of an illegal bias, the plaintiff can still survive a properly instituted motion for summary judgment by taking advantage of the *McDonnell* scheme of burdens and rebuttable presumptions. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *McDonnell*, the plaintiff set out to prove racially discriminatory hiring practices, but had no direct evidence of discrimination. The Supreme Court stated that he could still survive a motion for summary judgment by showing that (i) he belonged to the racial minority; (ii) he applied and was qualified for an open job position; (iii) he was rejected; and (iv) the employer continued to seek applications from similarly qualified individuals. Such a showing was deemed to create a rebuttable presumption of discrimination, and the burden

---

1. Statements by Doe's counsel appear at pages 46, 57, 99, 100, and 125–126 of the transcript of Haley's administrative hearing. The first instance was simply her informing the panel that neither she nor her client had received Haley's evidence in advance of his hearing; the second related to some people "milling around" the hearing room; the third was an objection to Haley's counsel standing behind Ms. Doe; the fourth and fifth related to her having attempted to tape-record the hearing; and the final episode involved a squabble in which both attorneys participated before Chairman Epps took the proceedings off the record. Given these incontestible facts, and given that Doe's attorney made no arguments before the panel and examined no witnesses, she could hardly be said to have participated in Haley's hearing any more than Haley's own attorney did.

then shifted to the employer to advance a non-discriminatory reason for rejecting the plaintiff. If the employer could do so, the presumption reverted to one of non-discrimination, and the burden shifted back to the plaintiff to show that the reason advanced was pretextual. *Id.* at 802–804, 93 S.Ct. at 1824–1825. The evidence used at this stage of the analysis could include the same evidence that was advanced by the plaintiff to initially shift the burden of production to the defendant, but this stage called for a higher level of specificity. *Lovelace,* 681 F.2d at 239–240.

■ Where the alleged discrimination is not in hiring, but is in some other form of employer or educational action, Courts out of necessity must alter the exact terms of the *McDonnell* test. *Moore v. City of Charlotte, NC,* 754 F.2d 1100, 1105 (4th Cir.1985). However, the basic requirement remains the same: the plaintiff, in order to create a presumption of illegal discrimination and shift the burden to the defendant, must show that he has been treated differently from similarly situated people outside of the protected class.[2] Hence, in *Lovelace,* 681 F.2d at 239, *McDonnell* was adapted such that an ADEA plaintiff alleging discriminatory discharge could shift the initial burden by showing that he was performing at a level that met employer's legitimate expectations and that the employer sought someone else to do the same work. Similarly, in *Moore,* the burden-shifting scheme was adapted such that a plaintiff alleging race discrimination in the enforcement of employee disciplinary measures could create the presumption of discriminatory intent through a showing that the prohibited conduct he engaged in was similar to that engaged in by employees outside of the protected class and that he received more severe disciplinary measures than those others. 754 F.2d at 1105–06; *see also Cook v. CSX Transport Corp.,* 988 F.2d 507, 511 (4th Cir.1993) (using same adaptation as *Moore* ); *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 960

(4th Cir.1996) (adapting *McDonnell* to claim of discrimination in promoting employees).

■ In the case at bar, there are two ways to frame Haley's allegations, but neither suffices under the *McDonnell* scheme as adapted in analogous cases. First, Haley can be viewed as alleging that it was discriminatory to separate him from the school. Such a case would fall into the *Lovelace* framework. When the claim is looked at in this manner, it fails for two reasons. First, because he was found to have harassed Jane Doe, Haley cannot show that he was performing at a level that met his employer's or his educational institution's legitimate expectations, and he thus cannot shift the burden to VCU to adduce a non-discriminatory reason for his separation from the university. Second, even if he could shift the burden, VCU has advanced a legitimate and non-discriminatory reason for suspending Haley: that he was sexually harassing Doe. This would shift the burden back to Haley, who has adduced no evidence whatsoever that this non-discriminatory rationale is pretextual. While, as noted above, the plaintiff need not present new evidence at this stage of the analysis, the evidence presented by Haley does not meet the heightened level of specificity called for by *Lovelace.*

The second way to view Haley's claim is as alleging that he was sexually discriminated against in the way the disciplinary proceedings were held. Under this view, the case falls into the *Moore* and *Cook* adaptations of *McDonnell,* and Haley's initial burden becomes one of showing that female students accused of similar conduct were treated more favorably. Haley adduces no such evidence. All of his evidence pertains to his own proceedings, and there are no comparisons to accounts of other accused students, nor are there even naked allegations that similarly situated women are or even men would be treated differently. This could possibly be excused by data showing that women rarely, if ever, are accused of sexual harassment,

---

**2.** In age discrimination cases, it is not always required that the favored person be outside of the protected class. It is sometimes sufficient that the favored person be a younger person within the statutorily defined class. *O'Connor v. Consol-*idated Coin Caterers' Corp., —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). However, there is no relevant analogy in gender discrimination cases, so the favored person must be outside of the class.

coupled perhaps with evidence that women accused of other VCU rules violations are treated differently than men are, but Haley makes no such contentions. Haley presents absolutely no evidence about how other students are treated in their proceedings before VCU's Hearing and Appeal Boards. Therefore, Haley cannot shift the burden to VCU to advance non-discriminatory reasons for its conduct under the *Moore* and *Cook* formula.

Because Haley cannot set forth a prima facie case of sexual discrimination, or in the alternative, if he can, he does not show the non-discriminatory reasons VCU advances for its conduct to be pretextual, his Title IX discrimination claim must be dismissed on VCU's motion for summary judgment.

Even if Haley stated a claim for relief for alleged violations of the Fourteenth Amendment—for instance, if he has properly stated a claim for injunctive relief—the Court would grant VCU's motion for summary judgment on this issue as well. Any claim of an equal protection violation based on Haley's status as a male would necessarily fail for the same reasons Haley's Title IX claim fails: he has utterly failed to evidence any gender-based action. Because there is no suspect class other than gender in which Haley claims membership, and because VCU's actions in separating him from the school have an easily conceivable basis in fact, there are no other grounds for an equal protection challenge. Any claim of a due process violation would fail because Haley received all the process he was due, as is further explained below.

■■■ Haley's allegations of impropriety which might support a procedural due process claim are that the authors of a supposedly discriminatory policy statement were in-

volved in his investigation; that he was found guilty based on scant evidence, some of which was time-barred under VCU's own Rules and Procedures; that he was hindered in the use of his attorney; and that Dean Clifton did not act in a neutral manner.[3]

The seminal case discussing the process due a student subject to discipline by a public school is *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).[4] *Goss* states that the precise procedure due in any given situation varies with the circumstances, and that it can even vary within the context of school discipline depending on the severity of the discipline being ordered. *Id.* at 578, 583, 95 S.Ct. at 738, 740. For instance, the ruling in *Goss* as to the procedure due in that case is specifically limited to where the discipline at issue is a short suspension. *Goss* is still instructive in the instant case, however, in that it states the bottom line for school discipline cases involving possible suspension or dismissal: that the accused student is entitled to notice and a hearing. *Id.* at 578, 95 S.Ct. at 738. *Goss* also points out two primary inquiries that can be applied across the board: one is whether the administration's action was arbitrary, and another is whether the alleged procedural defects impinged upon the accuracy of the findings made by the school administration, though it is acknowledged that even indubitably accurate findings do not justify a severe deprivation of due process. *Id.* at 581, 95 S.Ct. at 739. The bottom line of *Goss,* however, is that a student subject to discipline must be afforded prior notice and a hearing.

Because *Goss* involved a short-term suspension, it is not particularly helpful as to the sort of hearing to which an accused student in Haley's position is entitled. However, the

---

3. Haley's briefs supporting his motion for summary judgment and opposing VCU's for the most part simply argue the facts as Haley sees them and attempt to support these facts in accompanying exhibits. They do not set forth which facts are offered in support of which theories of recovery, nor do they cite much authority as to why the facts might support any of his various claims. Indeed, Haley's briefs are practically devoid of legal analysis. One exception is the use of *Yusuf* but that case arose out of a 12(b)(6) motion to dismiss, not a motion for summary judgment under Rule 56.

4. There is a difference in the procedure due for dismissal or suspension for academic reasons and that due where it is for disciplinary reasons. See *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 86, 98 S.Ct. 948, 953, 55 L.Ed.2d 124 (1978). In the instant case, VCU must be held to the more stringent standard applied to disciplinary dismissals, for which *Goss* is the seminal case.

Court of Appeals for the Fourth Circuit explored the application of *Goss* to a factual scenario very similar to Haley's in *Henson v. Honor Committee of U. Va.*, 719 F.2d 69 (1983). In *Henson*, the plaintiff charged that his disciplinary expulsion proceedings before the University of Virginia Honor Committee were constitutionally infirm in that he was denied representation by an attorney and in that the traditional rules of evidence were not followed. In granting summary judgment for the defendants, the Fourth Circuit noted that the Supreme Court had "made it plain that 'the judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and an opportunity to meet it.'" *Id.* at 73–74 (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The Court then cited *Goss* for the proposition that trial-like proceedings are not required by the Constitution in this setting. *Id.* The procedures afforded the plaintiff in *Henson* were adequate because (1) Henson had notice of the charges against him; (2) he had the opportunity to be heard before a disinterested tribunal; (3) he was confronted by his accusers; (4) he had a right of appeal; and (5) he was given the benefit of student "lawyers" and was able to consult with his personally retained attorney, though the attorney was not allowed to participate in the proceedings as an advocate. *Id.*

The procedure afforded Haley in his proceedings at VCU was similar to that afforded the plaintiff in *Henson* in nearly every respect, with the exception that Haley was not offered the services of a student "lawyer." This aspect of Henson's trial was not mentioned as dispositive of his case, nor was it deemed constitutionally required. It was simply one aspect of what made the procedure used in his disciplining constitutionally adequate. The Court must conclude that the procedures afforded Haley were adequate as well. Of utmost importance are that Haley had ample notice of his hearing, was confronted by his accusers, was heard before a disinterested tribunal, and had a right to appeal the Hearing Board's decision.

Haley might argue that his case is different in that he alleges that VCU did not adhere to its written procedures, whereas in *Henson*, it was conceded by the plaintiff that the University of Virginia and its Honor Committee acted in full compliance with their internal methodology. 719 F.2d at 75. However, the variances asserted by Haley either are not truly contrary to written procedure, or are de minimis. That the authors of a supposedly discriminatory policy statement were involved in his investigation is in no way contrary to any part of the VCU Rules and Procedures, nor is the fact that Dean Clifton may not have acted in a neutral manner. Because Haley was afforded a neutral fact-finder (the Hearing Board), these contentions do not implicate due process. While Haley asserts in his brief that he had a right to the assistance of an attorney before the Appeals Board, this right is not spelled out in the Rules and Procedures; further, there is no evidence that Haley was either actually or effectively denied this right. This claim thus also fails to support a due process violation. That Haley was found guilty based on allegedly scant evidence is not a condemnation of the procedure at all; rather, it is a complaint about the substantive fairness of the result of his hearing.

This leaves the only true possible variance between VCU's written Rules and Procedures and the procedures used during Haley's dismissal: the consideration of an incident barred by VCU's own two-year statute of limitations. This incident was brought up before the Hearing Board, and it was mentioned in the letter to Haley informing him of the Hearing Board's decision. Given that this is the sole variance from established and constitutionally valid procedure, and that there were other incidents as well as more evidence on which Haley's dismissal was based, it can hardly be said that his proceedings were constitutionally infirm. In addition, Haley's submissions to the Court do not reflect that he ever made an objection as to this matter before appealing the decision of the Hearing Board. Finally, it is far from clear whether the time-barred incident

played a role in the determination of Haley's sanction or his finding of guilt. The Hearing Board was not required to give Haley an explanation of its decision, and the opening of the letter referring to the time-barred incident in fact does not give a basis for the decision. Rather, the reference to that incident appears in a portion of the letter suggesting to Haley that he seek counseling about his attitudes toward women. It is at least as reasonable, if not more so, to view that reference as part of an explanation of why VCU was recommending counseling, as it is to view it as an explanation of the finding of guilt or of the actual sanction of separation.

Nothing about Haley's dismissal was arbitrary, capricious, or so shocking to the conscience so as to implicate substantive due process rights. See *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience.'") It is not the role of a federal court to reexamine the factual determinations made by school administrative bodies where those decisions are supported by such ample evidence as exists here.

### Conclusion

Because VCU is an arm of the Commonwealth of Virginia, it is not liable for Mr. Haley's claims of alleged Fourteenth Amendment violations. Even if it were, his Fourteenth Amendment claims would fail for lack of a supporting basis in fact, in evidence, and in theory. Again because VCU is an arm of the Commonwealth, it is not liable to Mr. Haley for alleged violations of state law. Even if it were, the Court would decline to exercise its supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3). While Haley can bring a Title IX suit against the University, the record establishes that there is no direct or indirect evidence or discriminatory intent, nor is there sufficient evidence to establish a presumption of such intent under the *McDonnell* framework and its various adaptations. As such, the Court grants VCU's motion to dismiss and/or for summary judgment and dismisses Haley's complaint with prejudice.