**Patricia J. CURTO, Plaintiff,**

**v.**

**Donald SMITH, Dr., Dean; Katherine Edmondson, Dr., Assistant Dean; Hunter Rawlings III, Dr., President; Wendy Tarlow, Associate University Counsel; Cornell University's College of Veterinary Medicine; Cornell University; State University of New York; Robert King, Chancellor of Suny; Rod**

---

Paige, Secretary of Education; Leroy Rooker, Director Family Policy Compliance; United States Department of Education; John Doe(s); Jane Doe(s), sued in their Individual and Official capacities, Defendants.

Patricia J. Curto, Plaintiff,

v.

Dr. Donald Smith; Dr. Katherine Edmondson; Dr. Hunter Rawlings III; Mr. Nelson Roth; Cornell University College of Veterinary Medicine; Cornell University; State University of New York; State of New York Mr. Richard Mills; John/Jane Doe(s); and New York State Education Department, Defendants.

Patricia J. Curto, Plaintiff,

v.

Dr. Katherine Edmondson; Dave Frank; Nelson Roth; Dr. Walter Lynn; Danilee Poppensiek; Cornell University College of Veterinary Medicine; Cornell University; State University of New York; State of New York; Robert King; William Murabito; Richard Mills; New York State Education Department; and John/Jane Doe(s), Defendants.

No. 5:01–CV–1570, 5:01–CV–1781, 5:01–CV–1824.

United States District Court, N.D. New York.

March 12, 2003.

Patricia J. Curto, West Seneca, Plaintiff Pro Se.

Cornell University Office of the University Counsel, Ithaca, for Cornell Defendants, Valerie L. Cross, Esq., Nelson E. Roth, Esq.

Office of the New York State Attorney General, Albany, for the State Defendants, David Fruchter, AAG.

Office of the United States Attorney, Syracuse, for Federal Defendants, Charles E. Roberts, AUSA, of Counsel.

## I. INTRODUCTION

SCULLIN, Chief Judge.

Plaintiff Patricia J. Curto brings three related actions alleging various deprivations of federal constitutional and statutory rights and related state law claims. The cases are 5:01–CV–1570 ("*Curto I*"), 5:01–CV–1781 ("*Curto II*"), and 5:01–CV–1824 ("*Curto III*"), chronologically by filing date. By Consolidation and Scheduling Order dated April 19, 2002, Magistrate Judge Sharpe consolidated the three underlying cases for the purposes of discovery, motions, and other pretrial matters and designated *Curto I* as the lead case. *See Curto I*, Dkt. No. 66.[1]

---

1. Citations to the record will indicate the appropriate docket by short citation to the spe-

## A.  *Curto I*

In *Curto I*, Plaintiff asserts seven causes of actions pursuant to 42 U.S.C. §§ 1983, 1985 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), all related to alleged violations of her rights under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232(g). Plaintiff names as Defendants the Cornell College of Veterinary Medicine (the "College of Veterinary Medicine"); Cornell University; Dr. Donald Smith, Dean of the College of Veterinary Medicine; Dr. Katherine Edmondson, Assistant Dean of the College of Veterinary Medicine; Dr. Hunter Rawlings III, President of Cornell University; and Wendy Tarlow, Associate University Counsel (collectively, the "Cornell Defendants"). In addition, Plaintiff names the State University of New York ("SUNY") and Robert King, Chancellor of SUNY (collectively, the "State Defendants").[2] Finally, Plaintiff names the United States Department of Education ("DOE"); Rod Paige, Secretary of Education; and Leroy Rooker, Director of the Family Policy Compliance Office (collectively, the "Federal Defendants").

Presently before the Court are the Cornell Defendants' motion for judgment on the pleadings pursuant to Rule 12(c), Defendant King's and the Federal Defendants' motions to dismiss pursuant to Rule

12(b)(6), and Plaintiff's motion for Rule 11 sanctions.

## B.  *Curto II*

In *Curto II*, Plaintiff asserts a single cause of action that invokes numerous constitutional and statutory provisions. Plaintiff generally alleges that various Defendants discriminated against her on the basis of her age and gender. Plaintiff names as Defendants the College of Veterinary Medicine; Cornell University; Dr. Donald Smith, Dean of the College of Veterinary Medicine; Dr. Katherine Edmondson, Assistant Dean of the College of Veterinary Medicine; Dr. Hunter Rawlings III, President of Cornell University; and Nelson Roth, University Counsel (collectively the "Cornell Defendants"). In addition, Plaintiff names Richard Mills, Commissioner of the New York State Education Department, as a Defendant.[3]

Presently before the Court is the Cornell Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 41(b) and 12(b)(6). The Cornell Defendants alternatively request that the Court issue a conditional order of dismissal, as it previously did in *Curto I,* directing Plaintiff to cure various defects in her amended complaint. Also before the Court is Defendant Mills' motion to dismiss pursuant to Rule 12(b)(6).

## C.  *Curto III*

In *Curto III*, Plaintiff asserts three causes of action, each alleging that various

cific case followed by the relevant docket number.

**2.**  Plaintiff's amended complaint in *Curto I* names SUNY as a Defendant in her amended complaint. *See Curto I*, Dkt. No. 26 at ¶ 11. However, the Court previously dismissed SUNY, along with the State of New York, from *Curto I* on Eleventh Amendment grounds. *See Curto I*, Dkt. No. 8 at 4–5. Accordingly, Defendant King is the sole remaining State Defendant.

**3.**  Plaintiff's amended complaint in *Curto II* names the State of New York, the New York State Education Department and SUNY as Defendants. *See Curto II*, Dkt. No. 6 at 3. However, the Court subsequently dismissed each of these State Defendants from *Curto II* on Eleventh Amendment grounds. *See Curto II*, Dkt. No. 6 at 4–5. Accordingly, Defendant Mills is the sole remaining State Defendant.

Defendants violated Title IX of the Education Amendments of 1972, the due process and equal protection clauses of the Fourteenth Amendment, the Civil Rights Restoration Act of 1987, and the Age Discrimination Act of 1975. In addition, Plaintiff invokes § 1983, presumably in relation to her constitutional claims. Plaintiff names as Defendants the College of Veterinary Medicine; Cornell University; Dr. Katherine Edmondson, Assistant Dean of the College of Veterinary Medicine; Dave Frank, Teaching Laboratory Manager, College of Veterinary Medicine; Dr. Walter Lynn, University Ombudsman, Cornell University; Danilee Poppensiek, Assistant University Ombudsman, Cornell University; and Nelson Roth, University Counsel, Cornell University.[4] Finally, Plaintiff names the State of New York; Governor George Pataki; SUNY; Robert King, Chancellor of SUNY; William Murabito, Associate Vice Chancellor of SUNY; the New York State Education Department; and Richard Mills, Commissioner of the New York State Education Department.

Presently before the Court are the Cornell Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) or, in the alternative, for summary judgment pursuant to Rule 56, and the State Defendants' motions[5] to dismiss pursuant to Rule 12(b)(6).

## II. BACKGROUND

Plaintiff, Patricia Curto, enrolled as a first-year student at the College of Veterinary Medicine during the 1997–1998 academic year. All students are required to take a foundation course in animal anatomy, known as VTMED–510—*The Animal Body* ("Block I"), as part of the first-year curriculum. Students must pass Block I before going on to other courses.

Plaintiff sat for the Block I examination in November 1997 and received a failing grade.[6] Plaintiff was thereafter notified that, pursuant to Veterinary School policy, she was not permitted to continue on in the curriculum, but that she could repeat Block I in Fall 1998. Plaintiff was also notified that students who receive a failing grade in two foundation courses are not permitted to reregister.[7]

Plaintiff reregistered and repeated Block I in the fall of 1998. Upon sitting for the Block I exam for the second time in November 1998, Plaintiff once again received a failing grade.[8] Plaintiff was thus barred from reregistering at the Veterinary School.

## III. DISCUSSION

### A. Standard

The majority of the motions presently before the Court are styled motions to dismiss pursuant to Rule 12(b)(6) or judgment on the pleadings under Rule 12(c). "The test for evaluating a 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6)." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). A court may

---

4. While *Curto III* appears to be a more detailed version of *Curto II* in nearly all respects, Plaintiff dropped reference to Dr. Hunter Rawlings III and Dr. Donald Smith in *Curto III*.

5. The State Defendants filed two motions to dismiss in *Curto III. See* Dkt. Nos. 30, 39.

6. Plaintiff earned a score of 427 out of a possible 1,000 points. A minimum score of

600 points is required to pass the exam. The class average for the exam was 760 points.

7. This policy appears to be the functional equivalent of expulsion.

8. Notably, the Cornell Defendants contend that Plaintiff left the exam completely blank the second time around. Plaintiff does not appear to dispute this fact.

not dismiss an action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim. *See* Fed.R.Civ.P. 12(b)(6); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). In making this determination, the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the Plaintiff's favor." *Chambers,* 282 F.3d at 152 (citing *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000)).

## B. Claims Against the Cornell Defendants Under 42 U.S.C. § 1983

■ As an initial matter, the Court will address all of Plaintiff's claims brought against the Cornell Defendants pursuant to 42 U.S.C. § 1983 in *Curto I, II and III,* as all such claims present the same legal issue. The College of Veterinary Medicine is one of four statutory colleges at Cornell University. *See* N.Y. Educ. Law § 5711 (McKinney 2002) (establishing the "New York State College of Veterinary Medicine at Cornell University"). Despite the hybrid public-private nature of the College of Veterinary Medicine, the Cornell Defendants contend that they may not be held liable under § 1983 because they are not state actors. Resolution of this question thus requires an analysis of the nature the relationship between the College of Veterinary Medicine and the State of New York. For the following reasons, the Court finds that the Cornell Defendants may not fairly be characterized as state actors in this case.

"Section 1983 provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." *Eagleston v. Guido,* 41 F.3d 865, 875 (2d Cir. 1994) (citation omitted).

"It is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."

*Id.* at 875–76 (quoting *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)).

The gravamen of Plaintiff's complaints in each of the underlying actions is that various members of the faculty and staff at the College of Veterinary Medicine and Cornell University violated her federally protected rights. The issue before the Court is, thus, whether the particular actors and the type of actions complained of bear a sufficient nexus to the State of New York to warrant a finding of state action.

Plaintiff argues that *Powe v. Miles,* 407 F.2d 73 (2d Cir.1968), compels the conclusion that the College of Veterinary Medicine is a state actor for the purposes of § 1983. In *Powe,* the Second Circuit found that the President and Dean of Alfred University engaged in state action when they enforced various university regulations against student protesters at the New York State College of Ceramics, a statutory college similar, in structure, to the College of Veterinary Medicine. *See id.* at 82–83. The *Powe* court reasoned that the statutory language creating the College of Ceramics designated the Alfred University administration "'as the representative of the state university trustees.'" *Id.* at 83 (quotation omitted).

Subsequent cases interpreting *Powe,* however, have made clear that "the determination of state action must be based on a particularized inquiry focusing on whether there is 'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself.'" *New York City Jaycees,*

*Inc. v. United States Jaycees, Inc.*, 512 F.2d 856, 858–59 (2d Cir.1975) (quoting *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). In *Logiodice v. Trustees of Maine Cent. Inst.*, 296 F.3d 22 (1st Cir.2002), the First Circuit summarized the Supreme Court's jurisprudence on this issue as follows:

> [U]nder several doctrines, acts by a nominally private entity may comprise state action—*e.g.*, if, with respect to the activity at issue, the private entity is engaged in a traditionally exclusive public function; is 'entwined' with the government; is subject to governmental coercion or encouragement; or is willingly engaged in joint action with the government.

*Id.* at 26 (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). The First Circuit noted, however, that "[t]he doctrines are too generally phrased to be self-executing: the cases are sensitive to fact situations and lack neat consistency." *Id.* (citation omitted); *see Brentwood Academy*, 531 U.S. at 298, 121 S.Ct. 924 (whether an ostensibly private entity acts under color of state law is a " 'necessarily fact-bound inquiry' ") (quot-

ing *Lugar*, 457 U.S., at 939, 102 S.Ct. 2744, 73 L.Ed.2d 482).

Recently, the Supreme Court identified "entwinement" of public and private functions as the unifying theme in the case law. *See Brentwood Acad.*, 531 U.S. at 295–97, 121 S.Ct. 924.[9] In *Logiodice*, one of the few cases to apply *Brentwood Academy*, the First Circuit found that a private secondary school, the Maine Central Institute ("MCI"), which operated in lieu of public schools under a contract with the State of Maine and a local school district, was not a state actor for the purposes of § 1983, with respect to matters of student discipline. *See Logiodice*, 296 F.3d at 28–32. Applying the "entwinement" analysis set forth in *Brentwood Academy*, the court noted that several factors weighed in favor of finding state action: MCI was subject to regulation by the state under various statutes; eighty percent of MCI's students were sponsored by the local school district; the school district contributed half of MCI's budget; and in many respects, MCI's students were treated as if they were regular public school students. *See id.* at 28. However, the court found more significant the fact that "MCI is run by private trustees and not public officials" and that the private trustees had the sole

---

**9.** The Cornell Defendants cite *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995), a pre-*Brentwood Academy* case, for the proposition that Cornell University is not a state actor. In *Lebron*, the Supreme Court held that "Amtrak was the Government for constitutional purposes, regardless of its congressional designation as private; it was organized under federal law to attain governmental objectives and was directed and controlled by federal appointees." *Brentwood Academy*, 531 U.S. at 296, 121 S.Ct. 924 (summarizing the holding in *Lebron* ).

The Cornell Defendants assert that Cornell University is not directed and controlled by the State of New York and thus cannot be said to be an arm of the state under *Lebron*. Specifically, the Cornell Defendants empha-

size that, in *Lebron*, a majority of Amtrak's directors were appointed by the President, 513 U.S. at 397–99, 115 S.Ct. 961, whereas only three out of forty-two trustees of Cornell University are appointed by the State of New York. *See Curto III*, Dkt. No. 54 at 7–8.

To the extent that the Cornell Defendants' characterization of the holding in *Lebron* is correct, it is not dispositive in this case. As noted above, *Brentwood Academy* adopted a fact-sensitive, case-by-case analysis of whether a nominally private entity is so entwined with government to render it essentially public in character. The fact that a minority of the trustees of Cornell University are appointed by the State of New York may weigh against a finding of state action. However, this factor alone is not dispositive.

right to "promulgate, administer and enforce" rules and regulations governing the particular activities complained of, *i.e.*, matters of student discipline. *Id.* The court thus concluded that there was no government entwinement with respect to the day-to-day administration of MCI, despite the undisputed ties to the State of Maine.

The parallels between the instant case and *Logiodice* are clear. As in *Logiodice*, the College of Veterinary Medicine has undeniably strong ties to the State of New York. For example, the College of Veterinary Medicine is created by statute, receives some state funding and must consult with the SUNY Board of Trustees regarding certain matters, including tuition rates and appointment of Deans. *See Stoll v. New York State Coll. of Veterinary Med. at Cornell Univ.*, 94 N.Y.2d 162, 166, 701 N.Y.S.2d 316, 723 N.E.2d 65 (1999).[10] However, the State of New York "does not have direct operational authority" over the administration of the statutory colleges and, unlike SUNY, employees of the statutory colleges are not classified as members of the State civil service." *Id.* (citation omitted). In addition, the vast majority of the day-to-day operations at the College of Veterinary Medicine are expressly committed to its private discretion. *See id.* (citations omitted). Significantly, as in *Logiodice*, "Cornell ... is specifically charged with creating the academic curriculum, hiring faculty, maintaining discipline and formulating educational policies for the statutory colleges." *See id.* (citation omitted).

The bulk of the causes of action in the instant cases relate to alleged unlawful and/or discriminatory application of various administrative, academic and disciplinary policies of the College of Veterinary Medicine. Specifically, in *Curto I*, Plaintiff takes issue with policies relating to dissemination of academic information;[11] in *Curto II and III*, Plaintiff alleges that academic and disciplinary policies were enforced against her in a discriminatory fashion, based on her age and gender. The critical factor in the present analysis is that the statutes governing the College of Veterinary Medicine explicitly commit the creation and enforcement of educational and disciplinary policies to the private institution. Moreover, there is no direct oversight or involvement by state officials in such matters. Finally, it is well-established that mere receipt of state funds is insufficient to transform a nominally private entity into a state actor for the purposes of § 1983. *See, e.g., Alcena v. Raine*, 692 F.Supp. 261, 266–67 (S.D.N.Y. 1988) (citing *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (private school regulated by city, state, and federal agencies, and receiving funds from them, does not act under color of state law)).

For the foregoing reasons, the Court finds that the creation and enforcement of policies relating to student discipline, academic standards, and other day-to-day operations of the College of Veterinary Medicine are entirely committed to the discretion of the private institution and,

---

**10.** The issue in *Stoll* was whether the College of Veterinary Medicine is a state agency for the purposes of New York's Freedom of Information Law, an inquiry under New York law that, while distinct, parallels the state-action analysis under federal law. In any event, the *Stoll* court's exhaustive analysis of the statutory structure of the College of Veterinary Medicine is highly relevant and equally applicable to the instant case.

**11.** Even if the Court were to conclude that the Cornell Defendants are state actors for the purposes of § 1983, FERPA itself creates no private cause of action and is similarly not enforceable under § 1983. *See* discussion *infra* Part III.C.2.

thus, are not materially "entwined" with the State of New York.[12] The Cornell Defendants may not, therefore, fairly be characterized as state actors for the purposes of § 1983 with respect to actions taken pursuant to such policies.[13] Accordingly, the Court grants the Cornell Defendants' Rule 12 motions with respect to all claims brought pursuant to § 1983 in *Curto I, II and III*.[14]

## C. *Curto I*

### 1. *Plaintiff's § 1985 Claims*

Plaintiff cursorily alleges a "conspiracy to further violate such rights . . . in violation of 42 U.S.C. [§ ] 1985." *See Curto I*, Dkt. No. 26 at ¶ 2. This purported cause of action is not among those enumerated with greater specificity later in her amended complaint. It thus appears that Plaintiff does not intend to pursue this particular cause of action.

■ In any event, "a conspiracy is actionable under § 1985 only if it involves a discriminatory animus based on race or some other invidious classification." *Posr v. Court Officer Shield # 207*, 180 F.3d

409, 419 (2d Cir.1999) (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829, 834–35, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Plaintiff makes no such allegation in *Curto I*, which centers on an alleged violation of a narrow statutory provision. Accordingly, to the extent that Plaintiff has asserted a cause of action under § 1985, the Court dismisses all such claims against all Defendants.

### 2. *Alleged FERPA violations*

FERPA conditions the availability of certain federal funds to educational institutions on adherence to stringent rules regarding the release and dissemination of education records. *See* 20 U.S.C. § 1232g. Plaintiff's first and fourth causes of action allege that various Defendants violated and conspired to violate her rights under FERPA by disclosing the fact that she failed an exam to an emeritus professor, various unnamed members of the public, and the DOE. *See Curto I*, Dkt. No. 26 at ¶¶ 39–45, 53–56.

■ It is well-established in the Second Circuit that FERPA itself does not create

---

**12.** As noted above, Plaintiff's complaints center exclusively on the enforcement of various policies at the College of Veterinary Medicine. To the extent that certain Cornell Defendants are, nominally, administrators, faculty or staff of Cornell University, Plaintiff's allegations concern actions by the Cornell University Defendants in capacities of oversight, or otherwise on behalf of, the College of Veterinary Medicine. Accordingly, the Court's conclusion that the creation and enforcement of the policies in question are entirely committed to the discretion of the private institution, and thus not entwined with the State of New York, applies with equal force to all of the Cornell Defendants.

**13.** At least one pre-*Brentwood Academy* case held that a subdivision of Cornell University and its agents were not state actors for the purposes of § 1983. *See Alcena*, 692 F.Supp. at 266–67 (receipt of state funding and state regulation did not render Cornell Medical

Center a "state actor" with respect to employment decisions); *cf. Stoll*, 94 N.Y.2d at 167, 701 N.Y.S.2d 316, 723 N.E.2d 65 (concluding that the College of Veterinary Medicine is not a state agency for the purposes of the New York Freedom of Information Law). *But see Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 551–53 (2d Cir.2001) (finding that county educational program created by statute and administered in conjunction with Cornell University was a state actor for First Amendment purposes).

**14.** Specifically, the Court dismisses (1) Plaintiff's fifth cause of action in *Curto I*, which alleges that the Cornell Defendants violated her due process rights by failing to comply with their own internal policies and rules regarding the dissemination of student information; and (2) all of Plaintiff's constitutional claims brought against the Cornell Defendants pursuant to § 1983 in *Curto II and III*.

a private cause of action to enforce its provisions. *See Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 33 (2d Cir. 1986); *Odom v. Columbia Univ.*, 906 F.Supp. 188, 195 (S.D.N.Y.1995) (citation omitted). In addition, the Supreme Court recently held that FERPA violations are not actionable under § 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 536 U.S. 273, 122 S.Ct. 2268, 2279, 153 L.Ed.2d 309 (2002) ("FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of funds to educational institutions.").[15] It is thus clear that FERPA is not enforceable through private lawsuits, either directly under the statute or via § 1983.[16] Accordingly, the Court dismisses all causes of action alleging violations of FERPA.[17]

### 3. Federal Defendants

Plaintiff's seventh cause of action asserts that the Federal Defendants and Cornell University violated various provisions of FERPA and associated regulations. *See Curto I*, Dkt. No. 26 at 61–68.

To the extent that Plaintiff seeks to vindicate these alleged violations directly under FERPA or *Bivens*, which is the functional equivalent of § 1983 for claims brought against federal officials, *see, e.g., Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir.1995) (*per curiam*), these claims must fail for the same reasons set forth above.[18]

### 4. Defendant King

Plaintiff does not name Defendant King specifically in any of the causes of action set forth in *Curto I*. However, Plaintiff generally avers that she "repeatedly request [sic] of Defendant SUNY and Chancellor King that punitive action be taken against SUNY employee's [sic] and defendant [sic] who violated her FERPA rights ...." *See Curto I*, Dkt. No. 26 at ¶ 32.

At the outset, to the extent that Plaintiff asserts a claim for damages against Defen-

---

**15.** The holding in *Gonzaga* reversed prior practice in the Second Circuit. *See, e.g., Brown v. City of Oneonta*, 106 F.3d 1125, 1131 (2d Cir.1997) ("It is clear that 'FERPA creates an interest that may be vindicated in a section 1983 action.'") (quotation omitted).

**16.** Aggrieved individuals may, however, seek administrative remedies authorized under FERPA. *See Gonzaga University*, 122 S.Ct. at 2278–79 (describing administrative mechanism for enforcing FERPA's provisions); 20 U.S.C. § 1232g(f)-(g) (authorizing promulgation of regulation governing review of FERPA complaints and enforcement by the Secretary of Education); *see also* 34 C.F.R. §§ 99.60–99.67. Indeed, Plaintiff availed herself of the administrative remedies available under FERPA by filing a formal complaint with the Family Policy Compliance Office of the DOE. *See Curto I*, Dkt. No. 26 at ¶¶ 24–29; *see also Curto I*, Dkt. No. 36, Exhibits "D"- "H."

**17.** In her amended complaint, Plaintiff included John and Jane Doe Defendants, all of whom she alleges were involved in violations of her rights under FERPA. *See Curto I*, Dkt. No. 26 at ¶ 12. Plaintiff recently moved for leave to amend her complaint to "add Dr. Susan Suarez, by name as a defendant, previous [sic] known as Jane Doe ...." *See Curto I*, Dkt. No. 75 at 1. As discussed above, Plaintiff's FERPA claims are not actionable under either FERPA or § 1983. Accordingly, the Court denies as futile Plaintiff's motion for leave to amend her complaint.

**18.** To the extent that Plaintiff alleges defects in the DOE's handling of the complaint that she filed with the Family Policy Compliance Office of the DOE, such an action is not cognizable; "FERPA provides no guaranteed access to a formal administrative proceeding or to federal judicial review; rather, it leaves to administrative discretion the decision whether to follow up on individual complaints." *Gonzaga Univ.*, 122 S.Ct. at 2283 (Stevens, J., dissenting); *see* 34 C.F.R. § 99.67(a) (stating that the Secretary of Education "may" enforce FERPA violations through various mechanisms).

dant King in his official capacity, her claim is barred by the Eleventh Amendment. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir.2002) (citations omitted).

Perhaps more fundamentally fatal to this claim is that it states no legally cognizable injury. As set forth above, FERPA creates no private right of action and FERPA violations cannot be vindicated under § 1983. *See* discussion *supra* Part III.C.2.

Liberally construed, Plaintiff's amended complaint purports to assert a legal right to prompt Defendant King to initiate internal disciplinary proceedings. Plaintiff asserts no basis for such a right, and it is doubtful that a private individual has such a right. Moreover, as discussed above, enforcement of FERPA is committed entirely to the discretion of the DOE, and there is no basis upon which to conclude that Defendant King has any authority whatsoever to enforce FERPA. Accordingly, the Court grants Defendant King's motion to dismiss.

### 5. State Law Causes of Action

Plaintiff's second and third causes of action in *Curto I* allege intentional infliction of emotional distress and invasion of her right to privacy, respectively, against the Cornell Defendants. Such claims are cognizable, if at all, only under state law.[19] Accordingly, having dismissed all of the federal claims in this action, the Court dismisses these claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). *See*

*Rocco v. New York State Teamsters Conference Pension & Ret. Fund*, 281 F.3d 62, 72 (2d Cir.2002) (a district court is not required to retain jurisdiction over pendent state law claims where no federal claims remain) (citation omitted).[20]

### 6. Plaintiff's Rule 11 Motion

As stated, also before the Court is Plaintiff's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See Curto I*, Dkt. No. 77. Plaintiff alleges that Defendant Edmondson and her counsel, Valerie Cross, made various false statements to the Court on June 13, 2002. The Cornell Defendants have not responded to the merits of this motion. Instead, by letter dated July 3, 2002, the Cornell Defendants point to various procedural irregularities as a ground for denying the motion. *See Curto I*, Dkt. No. 78.

There is no indication in the record that Plaintiff complied with the strictures of Rule 11(c)(1)(a), which requires, *inter alia*, that the moving party provide the party against whom sanctions are sought at least twenty-one days to withdraw the challenged statements before presenting the motion to the Court. Failure to comply with the procedural requirements of Rule 11 is fatal to a motion for sanctions. *See Schweizer v. Mulvehill*, 93 F.Supp.2d 376, 413 (S.D.N.Y.2000) (citation omitted).

Even if the Court were to overlook the procedural inadequacies of Plaintiff's motion, it is axiomatic that Rule 11 sanc-

---

**19.** It appears that there is no common law right of privacy under New York law and "the only available remedy is that created by Civil Rights Law §§ 50 and 51." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985) (citations omitted). However, the Civil Rights law only affords a remedy for "commercial exploitation of an individual's name, portrait or picture, without written consent." *Id.* Accordingly, it is doubtful on the facts of this

case, as pleaded by Plaintiff, that a cause of action will lie under state law.

**20.** Plaintiff's sixth "cause of action" in *Curto I* is, in substance, a prayer for "special damages," *i.e.*, lost wages and benefits, tuition fees, and housing costs. Having dismissed all of Plaintiff's substantive causes of action in *Curto I*, the Court need not address any issues related to damages.

tions are reserved for "extreme cases of misconduct." *Id.* (citation omitted). A review of Plaintiff's motion reveals that the statements of which she complains are, at most, indicative of minor and non-material factual inconsistences. Indeed, the majority of the statements Plaintiff points to relate to (1) *bona fide* factual disputes, *e.g.*, Plaintiff's student status at various relevant times, (2) proper legal argument, *e.g.*, when Plaintiff's administrative complaint was properly considered "filed," and (3) innocuous procedural matters, *e.g.*, whether the Cornell Defendants' motion is properly considered under Rule 12(b)(6), 12(c), or 56. For the foregoing reasons, the Court denies Plaintiff's motion for Rule 11 sanctions. **In addition, the Court admonishes Plaintiff that filing procedurally and substantively deficient motions is, in itself, a basis for imposing sanctions.** *Cf. Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d 465, 505–08 (E.D.N.Y. 1998) (imposing sanctions on *pro se* litigant after warnings regarding improper filings).

## D. *Curto II*

Plaintiff commenced *Curto II* by anonymous complaint dated November 23, 2001. *See Curto II*, Dkt. No. 1. By Conditional Order of Dismissal dated December 19, 2001, the Court directed Plaintiff to file an amended complaint in her own name. *See Curto II*, Dkt. No. 2. Plaintiff thereafter filed an amended complaint that complied with the Court's limited directive and asserts a single cause of action in which she generally alleges that she was discriminated against on the basis of her age and gender. *See Curto II*, Dkt. No. 4 at 10–11. Although Plaintiff invokes several federal statutes and constitutional provisions,[21] for the reasons set forth below, the Court

construes Plaintiff's claims as arising, if at all, under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–1688, and the Age Discrimination Act of 1975 ("ADA"), 42 U.S.C. § 6101.

### 1. *Defendant Mills*

Defendant Mills, the sole remaining State Defendant, moves to dismiss Plaintiff's amended complaint on various grounds, including Eleventh Amendment immunity and lack of personal involvement.

■ At the outset, the Eleventh Amendment bars suit against Defendant Mills in his official capacity. *See* discussion *supra* Part III.C.4. To the extent that Plaintiff sues Defendant Mills in his individual capacity, he argues that he has no legal authority over the Cornell Defendants' actions and, therefore, was not "personally involved" in the alleged deprivations as a matter of law. While the question of personal involvement is usually reserved for the summary judgment stage, *i.e.*, after there has been some discovery on the issue, the Court nevertheless grants the State Defendants' motion to dismiss. Given the nature of the relationship between Cornell University and the State of New York, as discussed with respect to the state-action issue, *see* discussion *supra* part III.B, it is clear that decisions regarding academic affairs and student discipline are entirely committed to the discretion of the College of Veterinary Medicine. Defendant Mills has no authority to oversee decisions in these matters and there exists no set of facts that would alter this conclusion.

---

21. Plaintiff invokes "the Civil Rights Act of 1964, the Age Discrimination Act of 1975, the Civil Rights Restoration Act of 1987, [T]itle IX of the Education Amendments of 1972, section 844 of the Education Amendments of 1972, Public Law 100–259, 42 U.S.C. [§ ] 6101, 34 C.F.R. [§§ ] 90, 100, 104 and 106, [the] Fourteenth Amendment to the United States Constitution and 42 U.S.C. [§ ] 1983." *See* Dkt. No. 4 at 10–11.

### 2. Cornell Defendants

The Cornell Defendants' motion to dismiss does not address the legal sufficiency of the allegations contained in *Curto II*. Rather, Defendants argue that (1) Plaintiff cannot maintain an action against private actors under 42 U.S.C. § 1983 and that (2) the Court should dismiss the action under Rule 41(b) for failure to comply with the Federal Rules. With respect to Rule 41(b) dismissal, the Cornell Defendants point out that Plaintiff is on notice that her pleadings are insufficient given the Court's directives in *Curto I* and that dismissal is therefore warranted. Finally the Cornell Defendants request, in the alternative, that the Court issue a Conditional Order of Dismissal directing Plaintiff to clarify her causes of action by second amended complaint.[22]

### a. Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In *Curto II*, Plaintiff alleges that various Cornell Defendants discriminated against her on the basis of sex in the decision to expel her and in various interactions leading up to that decision. To support her claim, Plaintiff alleges that the only four students expelled from the class of 2002 were women. *See Curto II*, Dkt. No. 4 at 7. Plaintiff additionally alleges that two male students

with similar academic deficiencies were not expelled. *See id.* at 7–8. Moreover, Plaintiff alleges that she complained to various Cornell Defendants about sex discrimination at the College of Veterinary Medicine. The Court finds that these allegations may be sufficient to state a claim under Title IX.[23] **Accordingly, the Court orders Plaintiff to file an amended complaint setting forth her claim under Title IX with particularity within thirty days of the date of this Order. Plaintiff is admonished that her amended complaint is limited to her Title IX claim and her ADA claim, as set forth below. Plaintiff is further admonished that her amended complaint must set forth specific facts with respect to specific Cornell Defendants which, if proven, entitle her to relief. The Court further instructs Plaintiff that failure to comply with this Order will result in dismissal of her claims without further order of the Court.**

### 2. Age Discrimination Act

The ADA "prohibit[s] discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. Plaintiff alleges that the average age of students expelled from the College of Veterinary Medicine in 1998 was thirty-four, whereas the average age of the student body as a whole was twenty-three. *See Curto II*, Dkt. No. 4 at 7. In addition, Plaintiff avers that she and one of the other expelled students were the only students over the age of forty in the pro-

---

**22.** Because the Court has concluded that the Cornell Defendants are not state actors for the purposes of § 1983, the sole remaining causes of action are Plaintiff's claims under Title XI and the ADA.

**23.** Plaintiff makes cursory reference to a Title IX retaliation claim. However, Plaintiff's allegation that she complained of discrimination on December 10, 1998, occurred, by her

own admission, after the faculty voted to expel her on December 3, 1998. *See Curto II*, Dkt. No. 4 at 7. Accordingly, the alleged complaint could not have influenced the Cornell Defendants' decision to expel her. Moreover, the other complaint that Plaintiff references apparently concerned age discrimination and thus did not concern a form of discrimination made unlawful under Title IX. *See id.*

gram. *See id.* Finally, Plaintiff alleges that at least one younger student with a similar academic record was not expelled. *See id.* The Court finds that these allegations may be minimally sufficient to state a claim under the ADA.

However, prior to filing suit under the ADA, a plaintiff must exhaust the administrative remedies set forth in 42 U.S.C. § 6104 and 45 C.F.R. § 90.50. *See Hilow v. Rome City Sch. Dist.,* No. 91–CV–567, 1994 WL 328625, *5 (N.D.N.Y. June 29, 1994) (McCurn, J.). Judge McCurn summarized these requirements as follows:

> In order to exhaust the necessary administrative remedies, 180 days must have elapsed since the complainant filed a complaint before the relevant federal funding agency and the agency has made no finding, or if, whatever the interval, the agency has found in favor of the complainant. 42 U.S.C. § 6104(f); 45 C.F.R. § 90.50(a). In addition, before filing an action in federal court, the complainant must give 30 days notice by registered mail to the Secretary of Health and Human Services, the Attorney General, the head of the granting agency, and the grant recipient. 42 U.S.C. § 6104(e)(1); 45 C.F.R. §§ 90.50(b)(3)(iii). This notice must set forth the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney's fees will be demanded if the complainant prevails. 42 U.S.C. § 6104(e)(2); 45 C.F.R. § 90.50(b)(3)(iv).

*Id.* The district court lacks subject matter jurisdiction over the suit if these prerequisites are not fulfilled. *See id.*

Plaintiff's complaint is devoid of any information relevant to this issue. *Cf. id.* (ordering plaintiff to produce documentation regarding exhaustion of administrative remedies within thirty days). **The Court therefore orders Plaintiff to produce documentation establishing that she exhausted her administrative remedies within thirty days of the date of this Order. The Court further instructs Plaintiff that failure to do so will result in dismissal of her ADA claim without further order of the Court.[24]**

### E. Curto III

The gravamen of Plaintiff's complaint in *Curto III* is that she was wrongfully denied access to various facilities at the College of Veterinary Medicine after she was expelled in December 1998.

#### 1. State Defendants

Plaintiff names as Defendants the State of New York; Governor George Pataki; SUNY; Robert King, Chancellor of SUNY; William Murabito, Associate Vice Chancellor of SUNY; the New York State Education Department; and Richard Mills, Commissioner of the New York State Education Department.

At the outset, the Eleventh Amendment bars suit against the State of New York, its subdivisions, and its officials in their official capacity. *See* discussion *supra* Part III.C.4. To the extent that Plaintiff sues the individual State Defendants in their individual capacities, the Court grants the State Defendants' motion to dismiss in its entirety for the same reasons set forth above with respect to Defendant Mills in *Curto II. See* discussion *supra* Part III.D.1.

#### 2. Cornell Defendants

Because the Court has concluded that the Cornell Defendants are not state actors for the purposes of § 1983, the sole

---

24. The Court notes that, in *Curto III,* the Cornell Defendants argue that Plaintiff has failed to exhaust her administrative remedies as required by the ADA and related regulations.

remaining causes of action are Plaintiff's claims under Title IX and the ADA.[25]

### a. Title IX

As set forth above, Title IX prohibits educational institutions that receive federal funding from discriminating on the basis of sex. *See* discussion *supra* Part III.D.2.a. Title IX's protections are limited to students and employees of federally funded educational programs. *See Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 252 (2d Cir.1995) (citation omitted). It is beyond cavil that "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir.1994) (citation omitted).

As an initial matter, the Cornell Defendants contend that Plaintiff was no longer a student at the time of the alleged wrongful acts by virtue of her expulsion. Plaintiff asserts that the decision to bar her from access to the College of Veterinary Medicine was, in itself, discriminatory. Specifically, Plaintiff alleges that expelled women were treated less favorably than expelled men with respect to the ramifications of expulsion, such as access to faculty and facilities. While it is true that Plaintiff was not actually prevented from accessing the facilities until after she was expelled, the Court finds that decisions regarding the ramifications of expulsion are part and parcel of the disciplinary decision itself and thus within the ambit of Title IX.

The Second Circuit has characterized Title IX claims related to university disciplinary decisions [26] as follows:

Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories. In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense. In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.

*Yusuf*, 35 F.3d at 715. In *Curto III*, Plaintiff alleges the latter, *i.e.*, that expelled women were treated more harshly than expelled men. In either case, wholly conclusory allegations do not suffice for the purposes of Rule 12(b)(6). *See id.* (citing *Albert*, 851 F.2d at 572). Rather, the plaintiff must point to particularized evidence that supports an inference that gender bias was causally linked to the flawed outcome. *See id.* (discussing sufficiency of allegations related to a claim of actual innocence). Such evidence may include "patterns of decision-making that also tend to show the influence of gender." *Id.*

The Cornell Defendants argue that Plaintiff's allegations in *Curto III* fail to state a claim upon which relief can be granted.[27] Specifically, the Cornell Defen-

---

**25.** Plaintiff refers to the "Civil Rights Act of 1987" in her complaint. No such act exists. However, the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259, 102 Stat. 28 (1988), amended, *inter alia,* Title IX and the ADA to include a broader definition of the statutory term "program or activity." *See O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir.1997) (citations omitted). It thus appears that the Civil Rights Restoration Act creates no cause of action, *per se.* Accordingly, the Court finds that Plaintiff's reference to the Civil Rights Restoration Act of 1987 is sub-

sumed by her claims under Title IX and the ADA.

**26.** It appears that Plaintiff's expulsion resulted from deficient academic performance rather than affirmative misconduct. Nevertheless, cases involving discipline for student misconduct are analogous to the present situation.

**27.** The Cornell Defendants move, in the alternative, for summary judgment and have included various affidavits, exhibits and a state-

dants argue that Plaintiff has proffered insufficient evidence of gender discrimination. However, the inquiry at this stage in the litigation is whether Plaintiff's allegations, if proven, entitle her to relief.

■ Plaintiff alleges that she was barred from campus after her expulsion. *See Curto III*, Dkt. No. 1 at ¶¶ 2, 3, 18. In addition, Plaintiff alleges that another female student, Karen Wallace, was barred from campus under similar circumstances. *See id.* at ¶ 14. Plaintiff further alleges that at least one male student, Josh Baum, was treated more favorably after a disciplinary hearing for allegedly egregious misconduct. *See id.* at 15, 16. Plaintiff, however, has not alleged that male students were treated more favorably *in similar circumstances*. Plaintiff was expelled for twice failing a required academic course, whereas the male student was brought up on disciplinary charges for misconduct. Plaintiff has not alleged that the penalties for these distinct grounds for discipline are the same, or even similar. Put another way, Plaintiff's allegations compare apples and oranges—the fact that a male student charged with misconduct was treated differently from a female student expelled for deficient academic performance is not probative of discriminatory animus. *Cf. Yusuf*, 35 F.3d at 716 (dismissing Title IX claim of selective enforcement where plaintiff failed to allege that the allegedly disparate treatment was based on similar disciplinary charges). Evidence that other *expelled* male students were given access to campus or that other male students were not expelled in similar circumstances would be probative, but Plaintiff alleges no such facts. For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted and, therefore, grants the Cornell Defendants' motion for judgment on the pleadings with respect to Plaintiff's Title IX claim in *Curto III*.[28]

### b. Age Discrimination Act

As noted, the ADA "prohibit[s] discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. Plaintiff sets forth no facts tending to support a claim of age discrimination in *Curto III*. The Court thus grants the Cornell Defendants' motion for judgment on the pleadings with respect to Plaintiff's ADA claim in *Curto III*.[29]

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

---

ment of material facts with their motion. By letter dated January 15, 2003, Plaintiff objects on the ground that she was unaware of the consequences of failing to comply with the rules related to summary judgment. *See Curto I*, Dkt. No. 83. In any event, there has been no discovery in this case and Plaintiff has not had an opportunity to evaluate and respond to the supplemental materials submitted by the Cornell Defendants. Accordingly, the Court will treat this motion as a motion for judgment on the pleadings pursuant to Rule 12(c).

28. Plaintiff also makes cursory references to a "retaliation" claim, which she may assert—it is unclear—under Title IX. *See Curto III*, Dkt. No. 1 at ¶ 28, 34, 43, 50, 63. Plaintiff offers nothing more than bare, cursory references in support of a retaliation claim. Accordingly, the Court grants the Cornell Defendants' motion to dismiss Plaintiff's claims under Title IX to the extent that she asserts a cause of action for retaliation.

29. As explained above, Plaintiff sets forth an nearly identical claim against the same Defendants in *Curto II* that is at least nominally supported by the factual allegations therein. Accordingly, the Court further instructs Plaintiff that she may pursue her ADA claim, if at all, in *Curto II*.

**ORDERS** that Plaintiff's motion to amend her complaint in *Curto I* is **DENIED** as futile; and the Court further

**ORDERS** that the Cornell Defendants' motion for judgment on the pleadings in *Curto I* is **GRANTED** with respect to Plaintiff's federal claims; and the Court further

**ORDERS** that Defendant King's motion to dismiss in *Curto I* is **GRANTED** with respect to Plaintiff's federal claims; and the Court further

**ORDERS** that the Federal Defendants' motion to dismiss in *Curto I* is **GRANTED** with respect to Plaintiff's federal claims; and the Court further

**ORDERS** that Plaintiff's remaining state law causes of action in *Curto I* are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c); and the Court further

**ORDERS** that Plaintiff's motion for Rule 11 sanctions in *Curto I* is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court is to enter judgment for all Defendants in *Curto I*, 5:01–CV–1570, and close this case; and the Court further

**ORDERS** that Defendant Mills' motion to dismiss in *Curto II* is **GRANTED**; and the Court further

**ORDERS** that the Cornell Defendants' motion to dismiss in *Curto II* is **GRANTED** with respect to all claims except Plaintiff's Title IX and ADA claims; and the Court further

**ORDERS** that the Cornell Defendants' request that the Court issue a conditional order of dismissal directing Plaintiff to clarify her remaining causes of action in Curto II is **GRANTED**; and the Court further

**ORDERS** that Plaintiff has thirty (30) days from the date of this Order to file an amended complaint in *Curto II* setting forth her claims under Title IX and the ADA [30] with particularity; and the Court further

**ORDERS** that Plaintiff has thirty (30) days to produce documentation establishing that she exhausted her administrative remedies with respect to her ADA claim in *Curto II*; and the Court further

**ORDERS** that Plaintiff is hereby warned that failure to comply with the Court's directives will result in dismissal of her Title IX and ADA claims in *Curto II* without further order of the Court; and the Court further

**ORDERS** that the Cornell Defendants' motion to dismiss in *Curto II* is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW** with respect to Plaintiff's remaining Title IX and ADA claims; and the Court further

**ORDERS** that the Cornell Defendants' motion for judgment on the pleadings in *Curto III* is **GRANTED**; and the Court further

**ORDERS** that the State Defendants' motions to dismiss in *Curto III* are **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court is to enter judgment for all Defendants in *Curto III*, 5:01–CV–1824, and close this case.

**IT IS SO ORDERED.**

---

30. The Court admonishes Plaintiff that she may only replead her ADA claim if she is able to produce documentation establishing that she exhausted her administrative remedies, as set forth above.